IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

DURAYL TYREE VANN,

     **Plaintiff,**

     v.                            CASE NO.  20-3200-SAC

JEFFREY FEWELL, et al.,

     **Defendants.**

**MEMORANDUM AND ORDER**
**AND ORDER TO SHOW CAUSE**

Plaintiff Durayl Tyree Vann is hereby required to show good cause, in writing, to the Honorable Sam A. Crow, United States District Judge, why this action should not be dismissed due to the deficiencies in Plaintiff's Complaint that are discussed herein.  Plaintiff is also given the opportunity to file a complete and proper amended complaint upon court-approved forms that cures all the deficiencies discussed herein.

**I.  Nature of the Matter before the Court**

Plaintiff brings this *pro se* civil rights action pursuant to 42 U.S.C. § 1983.  Although Plaintiff is currently incarcerated at the El Dorado Correctional Facility in El Dorado, Kansas, the events giving rise to his Complaint occurred during his detention at the Wyandotte County Jail ("WCJ').  The Court granted Plaintiff leave to proceed *in forma pauperis*.  Plaintiff seeks compensatory damages, punitive damages and declaratory relief.

**A.  Claims based on incidents occurring in 2015**

Plaintiff's Complaint is based on incidents occurring on January 15, 2015, during his detention at the WCJ.  Plaintiff alleges that staff used excessive force, denied medical attention for several days, and refused to return his religious items.  Plaintiff alleges that he was denied his

1

religious items from January 15, 2015 to February 5, 2015.  (Doc. 1, at 27–28.)  Plaintiff alleges that on February 5, 2015, he was offered "an 18 inch ripped up piece of blanket with huge holes and tears in it (that also smelled like dirty laundry[)] and a 'Circle 7' Koran (the religious text of the Moorish Science Temple.)" *Id.* at 13.  Plaintiff declined these items and asked for his own prayer rug and his Holy Qur'an.  *Id.*  Plaintiff alleges a First Amendment violation of his right to freely practice his religion.

Plaintiff claims that his January 19, 2015 disciplinary hearing violated his due process rights.  *Id.* at 31–33.  Plaintiff alleges that he received harsher treatment at his disciplinary hearings because of his race and religious preferences.  *Id.* at 36–37.  Plaintiff also alleges that in 2015 his grievances were not answered, his requests to bring criminal charges were denied, and he was placed on mail restrictions.  *Id.* at 33–35.  Plaintiff alleges that Internal Affairs Officers Buxton and Carver refused to fully investigate the January 15, 2015 incident, and denied Plaintiff's requests to bring criminal charges.  *Id.* at 42.  Plaintiff claims that he was retaliated against for refusing to drop his complaints.  Plaintiff also alleges that he was placed in an unsanitary cell on February 6, 2015, as a form of retaliation.  *Id.* at 38.

**B.  Claims based on incidents occurring in 2018 and 2019**

Plaintiff alleges that staff at the WCJ used excessive force and failed to provide him proper medical care in October 2018.  Plaintiff alleges that Deputy Mesner ignored Plaintiff's requests to call for medical assistance due to Plaintiff experiencing "severe chest pains, slurred speech, and numbness on the right side of [his] body."  *Id.* at 16.  Plaintiff alleges that after a couple of hours, he lost consciousness and was later found barely responsive on the floor of his cell.  When Plaintiff regained consciousness, he saw Deputies Lobner and John Doe standing over him.  Plaintiff alleges that they rolled him over on his stomach, cuffed him behind his back,

pushed his face into the floor, and began physically assaulting and "batterizing" him using excessive force without justifiable cause.  *Id*.  Plaintiff alleges that he was then drug out of his cell by his hair and cuffs, and then drug down a flight of stairs with his hands still cuffed behind his back.  Once he was at the bottom of the stairs, he was again physically battered by Officers Lobner, Schuler, and John Doe, until he began coughing up blood.  Then knees were placed on his neck and back while his feet and ankles were being twisted.  They took their knees off of Plaintiff "at the last minute."  *Id*. at 17.  Plaintiff alleges that the officers then laughed at him, placed him in a restraint chair, and rolled him into a suicide cell.

Plaintiff was then taken out of the restraint chair and placed in segregation for over four months.  *Id*.  Plaintiff alleges that while in segregation, he was denied meals "at times" by Deputy Ms. Reid, and was denied showers, hygiene, clean clothes, recreation, law library access, and medical attention.  *Id*. at 18.  Plaintiff claims that on October 29, 2018, Major Patrick threatened Plaintiff.  *Id*. at 41–42.  Plaintiff alleges that he went on a hunger strike to make personnel aware that Major Patrick and other deputies had threatened to kill Plaintiff.  *Id*. at 18.

Plaintiff alleges that on September 25, 2019, Warden Fewell retaliated against Plaintiff by placing him in segregation after Plaintiff spoke about the injustice and actions of Warden Fewell to an outside camera crew that was filming a documentary.   Plaintiff's alleges that Warden Fewell's retaliation on September 25, 2019, violated Plaintiff's First Amendment right of freedom of speech. *Id*. at 30.  Plaintiff alleges that Warden Fewell ordered him to be placed in segregation for the remainder of his time in custody at the WCJ.  Plaintiff alleges that Warden Fewell and his staff continued to retaliate against him and failed to tell Plaintiff that his mother had passed away until days later.

Plaintiff alleges that he was retaliated against by being placed on mail restrictions in

October of 2018, and in October and November of 2019. *Id.* at 36. Plaintiff alleges that the same deputies that beat him were assigned to his pod as a way to threaten and intimidate Plaintiff, which caused him emotional distress. *Id.* at 37–38. Plaintiff also alleges that he was moved to an unfit cell on October 18, 2019, and was forced to eat for three or four days in a cell that had a broken toilet. *Id.*

## II. Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)–(2).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48 (1988) (citations omitted); *Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992). A court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In addition, the court accepts all well-pleaded allegations in the complaint as true. *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006). On the other hand, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

A pro se litigant's "conclusory allegations without supporting factual averments are

insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted). The complaint's "factual allegations must be enough to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face." *Id.* at 555, 570.

The Tenth Circuit Court of Appeals has explained "that, to state a claim in federal court, a complaint must explain what each defendant did to [the *pro se* plaintiff]; when the defendant did it; how the defendant's action harmed [the plaintiff]; and, what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007). The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citation omitted).

The Tenth Circuit has pointed out that the Supreme Court's decisions in *Twombly* and *Erickson* gave rise to a new standard of review for § 1915(e)(2)(B)(ii) dismissals. *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (citations omitted); *see also Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). As a result, courts "look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief." *Kay*, 500 F.3d at 1218 (citation omitted). Under this new standard, "a plaintiff must 'nudge his claims across the line from conceivable to plausible.'" *Smith*, 561 F.3d at 1098 (citation omitted). "Plausible" in this context does not mean "likely to be true," but rather refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent," then the plaintiff has not "nudged [his] claims across the line from conceivable to

plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Twombly*, 127 S. Ct. at 1974).

## III. DISCUSSION

### 1. Statute of Limitations

Plaintiff alleges that in 2015 staff at the WCJ used excessive force, denied medical attention, refused to return his religious items, retaliated against him, refused to answer grievances, denied him due process and equal protection in his disciplinary proceedings, restricted his mail, and placed him in unsanitary conditions of confinement.  Plaintiff brought these same claims in a case he filed in this Court in 2015.  *See Vann v. Ash*, Case No. 15-3192-JAR.  That case was dismissed without prejudice on November 14, 2016, for failure to exhaust administrative remedies.  *Id*. at Doc.  48.  Almost two years later, on December 17, 2018, Plaintiff filed a response in that case inquiring about the applicable statute of limitations.  *Id*. at Doc.  50.  The Court responded that Plaintiff's inquiry about the statute of limitations calls for legal advice, which the Court may not provide.  *Id*. at Doc. 52.  Plaintiff then filed the instant case on July 24, 2020, including the same claims from 2015.  Plaintiff answered "no" on the instant Complaint when asked if he had filed any other lawsuits in state or federal court dealing with the same facts involved in this action or otherwise relating to his conditions of confinement. (Doc. 1, at 31.)

The statute of limitations applicable to § 1983 actions is determined from looking at the appropriate state statute of limitations and tolling principles.  *See Hardin v. Straub*, 490 U.S. 536, 539 (1989).  "The forum state's statute of limitations for personal injury actions governs civil rights claims under both 42 U.S.C. § 1981 and § 1983. . . . In Kansas, that is the two-year statute of limitations in Kan. Stat. Ann. § 60–513(a)."  *Brown v. Unified Sch. Dist. 501, Topeka*

*Pub. Sch.*, 465 F.3d 1184, 1188 (10th Cir. 2006) (citations omitted).  The same two-year statute of limitations governs actions under 42 U.S.C. § 1985.  *See Alexander v. Oklahoma*, 382 F.3d 1206, 1212 (10th Cir.), *rehearing denied*, 391 F.3d 1155 (10th Cir. 2004), *cert. denied*, 544 U.S. 1044 (2005).

While state law governs the length of the limitations period and tolling issues, "the accrual date of a § 1983 cause of action is a question of federal law."  *Wallace v. Kato*, 549 U.S. 384, 388 (2007).  Under federal law, the claim accrues "when the plaintiff has a complete and present cause of action."  *Id.* (internal quotation marks and citation omitted).  In other words, "[a] § 1983 action accrues when facts that would support a cause of action are or should be apparent." *Fogle v. Pierson*, 435 F.3d 1252, 1258 (10th Cir. 2006) (internal quotation marks and citation omitted), *cert. denied* 549 U.S. 1059 (2006).  A district court may dismiss a complaint filed by an indigent plaintiff if it is patently clear from the allegations as tendered that the action is barred by the statute of limitations.  *Id.* at 1258–59; *see also Jones v. Bock*, 549 U.S. 199, 214 (2007); *Hawkins v. Lemons*, No. 09-3116-SAC, 2009 WL 2475130, at *2 (D. Kan. Aug. 12, 2009).

It plainly appears from the face of the Complaint that Plaintiff's claims based on incidents in 2015 are subject to dismissal as barred by the applicable two-year statute of limitations.  Plaintiff filed his Complaint on July 24, 2020.   It thus appears that any events or acts of Defendants taken in connection with Plaintiff's claims regarding incidents in 2015 took place more than two years prior to the filing of Plaintiff's Complaint and are time-barred.  *See Fratus v. Deland*, 49 F.3d 673, 674-75 (10th Cir. 1995) (district court may consider affirmative defenses *sua sponte* when the defense is obvious from the face of the complaint and no further factual record is required to be developed).  Plaintiff has not alleged facts suggesting that he would be entitled to statutory or equitable tolling.

## 2.  Remaining Claims

The Court will give Plaintiff an opportunity to file an amended complaint containing any claims that are not barred by the statute of limitations.  However, any claims of retaliation must contain specific facts showing retaliation because of the exercise of Plaintiff's constitutional rights.  Conclusory allegations that lack facts demonstrating improper retaliatory motive are insufficient.

"[I]t is well established that an act in retaliation for the exercise of a constitutionally protected right is actionable under [42 U.S.C.] Section 1983 even if the act, when taken for a different reason, would have been proper."  *Smith v. Maschner*, 899 F.2d 940, 947 (10th Cir. 1990) (citations omitted).  The Tenth Circuit has held that:

> Government retaliation against a plaintiff for exercising his or her First Amendment rights may be shown by proving the following elements:  (1) that the plaintiff was engaged in constitutionally protected activity;  (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity;  and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct.

*Shero v. City of Grove*, 510 F.3d 1196, 1203 (10th Cir. 2007).

However, an "inmate claiming retaliation must allege *specific facts* showing retaliation because of the exercise of the prisoner's constitutional rights." *Fogle v. Pierson*, 435 F.3d 1252, 1264 (10th Cir. 2006) (quotations and citations omitted).  Thus, for this type of claim, "it is imperative that plaintiff's pleading be factual and not conclusory.  Mere allegations of constitutional retaliation will not suffice." *Frazier v. Dubois*, 922 F.2d 560, 562 n. 1 (10th Cir. 1990).  "To prevail, a prisoner must show that the challenged actions would not have occurred 'but for' a retaliatory motive." *Baughman v. Saffle*, 24 F. App'x 845, 848 (10th Cir. 2001)

(citing *Smith v. Maschner*, 899 F.2d 940, 949–50 (10th Cir. 1990); *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998)).

Plaintiff's claims based on his dissatisfaction with the grievance process and his claims that defendants failed to properly respond to his grievances are also subject to dismissal. Plaintiff acknowledges that a grievance procedure is in place and that he used it. Plaintiff's claims relate to his dissatisfaction with responses to his grievances. The Tenth Circuit has held several times that there is no constitutional right to an administrative grievance system. *Gray v. GEO Group, Inc.*, No. 17–6135, 2018 WL 1181098, at *6 (10th Cir. March 6, 2018) (citations omitted); *Von Hallcy v. Clements*, 519 F. App'x 521, 523–24 (10th Cir. 2013); *Boyd v. Werholtz*, 443 F. App'x 331, 332 (10th Cir. 2011); *see also Watson v. Evans*, Case No. 13–cv–3035–EFM, 2014 WL 7246800, at *7 (D. Kan. Dec. 17, 2014) (failure to answer grievances does not violate constitutional rights or prove injury necessary to claim denial of access to courts); *Strope v. Pettis*, No. 03–3383–JAR, 2004 WL 2713084, at *7 (D. Kan. Nov. 23, 2004) (alleged failure to investigate grievances does not amount to a constitutional violation); *Baltoski v. Pretorius*, 291 F. Supp. 2d 807, 811 (N.D. Ind. 2003) (finding that "[t]he right to petition the government for redress of grievances . . . does not guarantee a favorable response, or indeed any response, from state officials"). Plaintiff's claims regarding the grievance process and the failure to properly respond to grievances are subject to dismissal for failure to state a claim.

Plaintiff also makes claims that he was threatened by certain defendants. The Tenth Circuit has found that "[m]ere verbal threats or harassment do not rise to the level of a constitutional violation unless they create 'terror of instant and unexpected death.'" *Alvarez v. Gonzales*, 155 F. App'x 393, 396 (10th Cir. 2005) (unpublished) (citations omitted). The Tenth Circuit has held that such verbal abuse is not sufficient to state a § 1983 claim alleging an Eighth

Amendment violation.  *See e.g., id.* (threats that officer would "burn this guy"); *McBride v. Deer*, 240 F.3d 1287, 1291 (10th Cir. 2001) (threats of being sprayed with mace); *Walker v. Young*, 1992 WL 49785 *2 (10th Cir. 1992) (threats to "get even" and labelling as a snitch did not violate § 1983); *Collins v. Cundy*, 603 F.2d 825, 827 (10th Cir. 1979) (threats of being hanged); *see also Abeyta v. Chama Valley Independent School District*, 77 F.3d 1253, 1256 (10th Cir. 1996) ("even extreme verbal abuse typically is insufficient to establish a constitutional deprivation").

Any amended complaint must also comply with Federal Rules of Civil Procedure 8, 18 and 20.  Rule 20 governs permissive joinder of parties and pertinently provides:

> (2) ***Defendants***.  Persons . . . may be joined in one action as defendants if:
> (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
> (B) any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20(a)(2).  Rule 18(a) governs joinder of claims and pertinently provides: "A party asserting a claim . . . may join . . . as many claims as it has against an opposing party."  Fed. R. Civ. P. 18(a).  While joinder is encouraged for purposes of judicial economy, the "Federal Rules do not contemplate joinder of different actions against different parties which present entirely different factual and legal issues."  *Zhu v. Countrywide Realty Co., Inc*., 160 F. Supp. 2d 1210, 1225 (D. Kan. 2001) (citation omitted).  The Court of Appeals for the Seventh Circuit held in *George v. Smith* that under "the controlling principle" in Rule 18(a), "[u]nrelated claims against different defendants belong in different suits."  *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) (Under Rule 18(a), "multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2.").

Requiring adherence in prisoner suits to the federal rules regarding joinder of parties and claims prevents "the sort of morass [a multiple claim, multiple defendant] suit produce[s]." *Id.* It also prevents prisoners from "dodging" the fee obligations and the three strikes provisions of the Prison Litigation Reform Act.  *Id.* (Rule 18(a) ensures "that prisoners pay the required filing fees—for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees.").

In sum, under Rule 18(a), a plaintiff may bring multiple claims against a single defendant.  Under Rule 20(a)(2), he may join in one action any other defendants who were involved in the same transaction or occurrence and as to whom there is a common issue of law or fact.  He may not bring multiple claims against multiple defendants unless the prescribed nexus in Rule 20(a)(2) is demonstrated with respect to all defendants named in the action.

The Federal Rules authorize the court, on its own initiative at any stage of the litigation, to drop any party and sever any claim.  Fed. R. Civ. P. 21; *Nasious v. City & Cnty. of Denver Sheriff's Dept.*, 415 F. App'x 877, 881 (10th Cir. 2011) (to remedy misjoinder, the court has two options: (1) misjoined parties may be dropped or (2) any claims against misjoined parties may be severed and proceeded with separately).  In any amended complaint, Plaintiff should set forth the transaction(s) or occurrence(s) which he intends to pursue in accordance with Rules 18 and 20, and limit his facts and allegations to properly-joined defendants and occurrences.  Plaintiff must allege facts in his complaint showing that all counts arise out of the same transaction, occurrence, or series of transactions or occurrences; and that a question of law or fact common to all defendants will arise in this action.

In filing an amended complaint, Plaintiff must also comply with Fed. R. Civ. P. 8's pleading standards.  Rule 8 of the Federal Rules of Civil Procedure requires "a short and plain

statement of the claim showing the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).

Plaintiff's Complaint fails to comply with this rule.  "It is sufficient, and indeed all that is

permissible, if the complaint concisely states facts upon which relief can be granted upon any

legally sustainable basis.  Only a generalized statement of the facts from which the defendant

may form a responsive pleading is necessary or permissible." *Frazier v. Ortiz*, No. 06-1286,

2007 WL 10765, at *2 (10th Cir. Jan. 3, 2007) (emphasis omitted) (quoting *New Home

Appliance Ctr., Inc. v. Thompson*, 250 F.2d 881, 883 (10th Cir. 1957)).

## IV.  Response and/or Amended Complaint Required

Plaintiff is required to show good cause why his claims regarding incidents occurring in

2015 should not be dismissed as barred by the statute of limitations.  For claims occurring in the

two years prior to filing, Plaintiff is given the opportunity to file a complete and proper amended

complaint upon court-approved forms to cure the deficiencies discussed herein.[1]  Plaintiff is

given time to file a complete and proper amended complaint in which he (1) raises only properly

joined claims and defendants; (2) alleges sufficient facts to state a claim for a federal

constitutional violation and show a cause of action in federal court; and (3) alleges sufficient

facts to show personal participation by each named defendant.

---

[1] To add claims, significant factual allegations, or change defendants, a plaintiff must submit a complete amended complaint.  *See* Fed. R. Civ. P. 15.  An amended complaint is not simply an addendum to the original complaint, and instead completely supersedes it.  Therefore, any claims or allegations not included in the amended complaint are no longer before the court.  It follows that a plaintiff may not simply refer to an earlier pleading, and the amended complaint must contain all allegations and claims that a plaintiff intends to pursue in the action, including those to be retained from the original complaint.  Plaintiff must write the number of this case (20-3200-SAC) at the top of the first page of his amended complaint and he must name every defendant in the caption of the amended complaint.  *See* Fed. R. Civ. P. 10(a).  Plaintiff should also refer to each defendant again in the body of the amended complaint, where he must allege facts describing the unconstitutional acts taken by each defendant including dates, locations, and circumstances.  Plaintiff must allege sufficient additional facts to show a federal constitutional violation.

If Plaintiff does not file an amended complaint within the prescribed time that cures all the deficiencies discussed herein, this matter will be decided based upon the current deficient Complaint and may be dismissed without further notice for failure to state a claim.

**IT IS THEREFORE ORDERED THAT** Plaintiff is granted until **January 21, 2021,** in which to show good cause, in writing, to the Honorable Sam A. Crow, United States District Judge, why Plaintiff's claims regarding incidents occurring in 2015 should not be dismissed as barred by the statute of limitations.

**IT IS FURTHER ORDERED** that Plaintiff is also granted until **January 21, 2021**, in which to file a complete and proper amended complaint to cure all the deficiencies discussed herein.

The clerk is directed to send § 1983 forms and instructions to Plaintiff.

**IT IS SO ORDERED**.

**Dated December 21, 2020, in Topeka, Kansas.**

**s/ Sam A. Crow**
**Sam A. Crow**
**U.S. Senior District Judge**