United States District Court
For the District Of Kansas

# Amended Complaint

1)
Durayl Tyree Vann, Plaintiff

V.

Jeffery Fewell, defendant(s) et, al
Deputy Mesner in his individual capacity;
Deputy Lobner in his individual capacity;
Deputy Reid in her individual capacity;
Deputy Scholer in his individual capacity;
Major Patrick in his individual capacity;
John Doe in his individual capacity;
Deputy William Green in his individual capacity;
Deputy Faulkner in his individual capacity;
Deputy Hibbler in her individual capacity;
Sgt. E. Sage in his individual capacity;
Deputy Naomi Green-Lortez in her individual capacity
Sgt. B. Jones in his individual capacity
Sgt. Harmon in his individual capacity
Sgt. J. Russell in his individual capacity
Sgt. S. Brown in her individual capacity
Kimberly Holmes in her individual capacity
Sara Toms in her individual capacity
Internal Affairs Lt. Buxton in his individual capacity
Internal Affairs Det Carver in his individual capacity
Under Sheriff Larry Roland in his individual capacity
Wyandotte County Sheriff Donald Ash in his individual Capacity

Case NO: 20-3200-SAC
Amended Complaint

Civil Rights Complaint
Pursuant To 42 U.S.C
§ 1983

## A. JURISDICTION

2)
Durayl Tyree Vann (Plaintiff), is a citizen of Kansas who presently resides at Lansing Correctional Facility, P.O Box 2, Lansing Ks, 66043.

3) Defendant Deputy Mesner is a citizen of Kansas City, Ks, and is employed as Deputy Sheriff at Wyandotte County Jail. At the time the claims alleged in this complaint arose, this defendant was acting under the color of state law. Deputy Mesner was employed as a deputy sheriff at Wyandotte County Jail

4) Defendant Deputy Lobner is a citizen of Kansas City, Ks and is employed as Wyandotte County Jail Deputy Sheriff. At the time the claims alleged in this complaint arose, this defendant was acting under the color of state law. Mr. Lobner was employed at Wyandotte County Jail as a Deputy Sheriff.

5) Defendant Schuler is a citizen of Kansas City, Ks and is employed as a Wyandotte County Jail Deputy Sheriff. At the time the claims alleged in this complaint arose, this defendant was acting under the color of state law. Mr. Schuler was employed at Wyandotte County Jail as a deputy sheriff

6) Defendant John Doe is a citizen of Kansas City, Ks and is employed as a Wyandotte County Jail Deputy sheriff. At the time the claims alleged in this complaint arose, this defendant was acting under the color of state law. John Doe was employed at Wyandotte County Jail as a deputy sheriff

7) Defendant E. Sage is a citizen of Kansas City, Ks and is employed as a Seargent at Wyandotte County Jail. At the time the claims alleged in this complaint arose, this defendant was acting under the color of state law. E. Sage was employed at Wyandotte County Jail as a Sergeant.

8) Defendant J. Patrick is a citizen of Kansas City, Ks and is employed as a Major at Wyandotte County Jail. At the time the claims alleged in this complaint arose, this defendant was acting under the color of state law. J. Patrick was employed at Wyandotte County Jail as a Major.

9) Defendant Jeffery Fewell is a citizen of Kansas City, Ks and is employed as a Warden at Wyandotte County Jail. At the time the claims alleged in this complaint arose, this defendant was acting under the color of state law. J. Fewell was employed at Wyandotte County Jail as a Warden.

10) Defendant Deputy William Green is a citizen of Kansas City, Ks and is employed as a deputy sheriff at Wyandotte County Jail. At the time the claims alleged in this complaint arose, this defendant was acting under the color of the state law. William Green was employed at Wyandotte County Jail as a deputy.

11) Defendant Faulkner is a citizen of Kansas City, Ks and is employed as a deputy sheriff at Wyandotte County Jail. At the time the claims alleged in this complaint arose, the defendant was acting under the color of state law. Faulkner was employed at Wyandotte County Jail as a deputy sheriff.

12) Defendant M. Hibbler is a citizen of Kansas City, Ks and is employed as a deputy sheriff at Wyandotte County Jail. At the time the claims alleged in this complaint arose, the defendant was acting under the color of state law. M. Hibbler was employed at Wyandotte County Jail as a deputy sheriff.

13) Defendant Naomi Green-Cortez is a citizen of Kansas City, Ks and is employed at Wyandotte County Jail as a Deputy sheriff. At the time the claims alleged in this complaint arose, the defendant was acting under the color of state law. Naomi Green-Cortez was employed at Wyandotte County Jail as a deputy sheriff.

14) Defendant B. Jones is a citizen of Kansas City, Ks and is employed as a Sergeant at Wyandotte County Jail. At the time the claims alleged in this complaint arose, the defendant was acting under the color of state law. B. Jones was employed at Wyandotte County Jail as a Sergeant.

15) Defendant F. Harmon is a citizen of Kansas City, Ks and is employed as a sergeant at Wyandotte County Jail. At the time the claims alleged in this complaint arose, the defendant was acting under the color of the state law. Mr. Harmon was employed at Wyandotte County Jail as a Sergeant

16) Defendant J. Russell is a citizen of Kansas City, Ks and is employed as a Captain at Wyandotte County Jail. At the time the claims alleged in this complaint arose, the defendant was acting under the color of state law. Mr. Russell was employed at Wyandotte County Jail as a captain

17) Defendant Ms. Reid is a citizen of Kansas City, Ks and is employed as a deputy sheriff at Wyandotte County Jail. At the time the claims alleged in this complaint arose, the defendant was acting under the color of state law. Reid was employed at Wyandotte County Jail as a deputy sheriff

18) Defendant S. Brown is a citizen of Kansas City, Ks and is employed as a deput Sergeant at Wyandotte County Jail. At the time the claims alleged in this complaint arose, this defendant was acting under the color of state law. S. Brown was employed at Wyandotte County Jail as sergeant.

19) Defendant Kimberly Holmes is a citizen of Kansas City, Ks and was employed as head of classifications and disciplinary hearing officer at Wyandotte County Jail. At the time the claims alleged in this complaint arose, this defendant was acting under the color of state law. Kimberly Holmes was employed at Wyandotte County Jail as head of classifications and disciplinary.

20) Defendant Sara Toms is a citizen of Kansas City, Ks and is employed as head of classifications and disciplinary at Wyandotte County Jail. At the time the claims alleged in this complaint arose, this defendant was acting under the color of state law. Sara Toms was employed at Wyandotte County Jail as head of classifications and disciplinary.

21) Defendant Buxton is a citizen of Kansas City, Ks and is employed as Internal Affairs at Wyandotte County sheriffs office (under Warden Fewells command). At the time claims alleged in this complaint arose, this defendant was acting under the color of state law. Mr. Buxton was employed at Wyandotte County Jail as Internal Affairs officer under Warden Fewells command.

22) Defendant Detective Carver is a citizen of Kansas City, Ks and is employed as Internal Affairs at Wyandotte County sheriffs office (Under Warden Fewells command). At the time claims alleged in this complaint arose, this defendant was acting under the color of state law. Detective Carver was employed at Wyandotte County Jail as Internal Affairs under Warden Fewells command and orders.

23) Defendant Larry Roland is a citizen of Kansas City, Ks and is employed as the Under Sheriff of Wyandotte County Jail, Kansas. At the time the claims alleged in this complaint arose, this defendant was acting under the color of state law. Larry Roland was employed at Wyandotte County Sheriffs office as the Under sheriff of Kansas City, Ks.

24) Defendant Donald Ash is a citizen of Kansas City, Ks and is employed as the Sheriff of Wyandotte County, Kansas. At the time the claims alleged in this complaint arose, this defendant was acting under the color of state law. Donald Ash was employed at Wyandotte County Sheriff's office as Sheriff of Wyandotte County, Kansas.

* * Each defendant is sued individually and in his/her individual capacity. At all times mentioned in this complaint each individual defendant acted under the color of state law.

25)

Jurisdiction is invoked pursuant to 28 U.S.C § 1343 (3); 42 U.S.C § 1983.

( If you wish to assert jurisdiction under different or additional statutes; you may list them below.):

Jurisdiction is to remain under 42 U.S.C § 1983

# B. NATURE OF THE CASE

26)

1) Briefly state the background of your case:

On 1-15-15, while being an inmate in Wyandotte County Jail, I, plaintiff (Duray Vann), was deliberately punched in the face, with brute force and closed fists, by Deputy Sheriff William Green while being held down by his ~~fried~~ friend and co-worker Deputy Faulkner.

27) Plaintiff declares that he was shackled, handcuffed behind his back, and laying flat on his stomache displaying no actions of resistance, transgression, or non-compliance in the moments before nor during the deputies use of unjustifiable excessive force on the plaintive

28) During the beating of plaintiff, Deputies William Green and Faulkner called plaintiff several racist names. Plaintiff declares that the beating done to him was racially motivated. 2 other Deputy Officers (Hibbler and Sgt E. Sage) were physically there witnessing the unwarranted and malicious actions of Deputy William Green and Faulkner beating the plaintiff, but refused to make any attempts to stop them from brutally assaulting and physically battering plaintiff. Nor did they file any incident (which is mandatory protocol) report about these officers' involvement in a physical altercation involving a cuffed up inmate who sustained multiple serious injuries due to the unwarranted actions of the deputies against the plaintiff (who imposed no threat or security risk). Plaintiff did sustain the injuries of blackeyes, etc.

29) Plaintiff declares that after the beating of plaintiff, he was then threatened by Sgt. E. Sage "that the use of a taser and more beatings would occur" if plaintiff did not keep quiet about what his fellow officers did to plaintiff (me). Plaintiff was once again Assaulted and Batterized by officers again while having hands cuffed behind (hand cuffs were left on plaintiff and cutting deeeply into his wrist for over several hours). Plaintiff sustained multiple grievious injuries (physically) to his person due to the multiple beatings and use of unjustiable and malicious acts of excessive force. Plaintiff declares that he was denied medical attention by Wyandotte County Jail Deputies for several days. Plaintiff begins filing complaints against the actions of Wyandotte County Jail deputies (see exhibits of evidence).

30) In retaliation of complaints being filed, on the actions of officers beating plaintiff,

C. CAUSE OF ACTION

several other physical assaults and batteries were inflicted upon plaintiff. Plaintiff also states that this was done to scare, intimidate, hinder, and try to stop plaintiff from exposing the incidents between deputies and plaintiff that were taking place in Wyandotte County Jail.

31) Plaintiff declares that these incidents continued consistantly, in a series of physical assaults and batteries against plaintiff from the dates of 01-15-15 thru 01-01-20. Plaintiff did document all incidents (see affadavit and exhibits of evidence). Plaintiff declares that all defendants who are listed in this complaint did commit said actions, as mentioned in this complaint (see plaintiffs' affadavit) intentionally, willfully, knowingly, and maliciously, in a wanton premeditated fashion with an intentional objective to hurt, maim, and injure plaintiff physically, mentally, and emotionally.

32) Plaintiff declares that the incidents that occurred against plaintiff, after the initial use of brutal excessive force (the physical beatings suffered by plaintiff on 1-15-15), were done not only in forms of retaliation of plaintiffs refusal to cease in utilizing the plaintiffs' constitutional right to redress grievances by use of facility grievance, mail, and court system, but to also prevent, hinder, or stop plaintiff from filing documented complaints with the courts of the United States along with outside organizations (ACLU, NAACP, News channels, Etc). The actions of these officers also include: hindering plaintiff from access to the courts, the confiscation of all of plaintiff's legal and litigation documents and material, the confiscation of all incoming and outgoing mail, the denial of basic needs such as meals, bath/showes, clean clothing, and hygiene; and denial of medical attention; denial to of free speech and religious practice (see Affadavit of Plaintiff).

33) Plaintiff furthermore declares that, due to the retaliation factor mentioned in this complaint, all actions and defendants listed are connected and inter-related whereas, were it not for the first incident, the series and multitude of the other incidents would not have occurred. Therefore plaintiff believes that a nexus is established between the individual acts and the defendants who committed them as a whole, due to the consistant re-occurring retaliation factor, that combines all defendants.

34) Plaintiff lastly declares that a complaint was filed with the courts and was wrongfully dismissed without prejudice due to Judge Julie Robinson's lack of knowledge pertaining to the interactions between KDOC secretary of corrections and the County Jails of Kansas when concerning the steps of exhausting all remedy issues. Plaintiff proceeded in refiling the complaint. During the process of refiling the complaint, the incidents mentioned in plaintiff's affadavit occurred and therefore additional incidents and defendants were added to complaint whereas complaint is now an Amended Complaint.

# C. CAUSE OF ACTION

35) I allege that the following of my constitutional rights, privileges or immunities have been violated and that the following facts form the basis for my allegations:

A) (1) Count I : Violation of United States Constitution (8th Amend.) Cruel and Unusual punishment: Use of excessive force

36) (2) Supporting Facts: I was maliciously and wantonly subjected to the use of physical excessive force by Wyandotte County Jail deputy sheriffs. On the date of 1-15-15 Deputy William Green and Deputy Faulkner did aggravatedly assault and brutally batterize me by holding me down and punching me in my face, with fist, causing serious injuries. I was already handcuffed behind my back and layin flat on my stomache and displaying no transgression or physical non compliance that would warrant or justify such actions from said deputies. I was called racist names (ie nigger, boy, coon) while being grabbed by my hair and punched in my face while having my ankle twisted and snapped. I, Durayl Vann, did sustain serious injuries from this incident such as black eyes (some permanent vision loss in left eye), blood nose, injured ankle, long term headache, and deep lacerations and nerve damage in wrist and arm. The actions of these 2 deputies were not being used in effort to maintain or restore discipline but was instead being used to maliciously and sadistically cause harm to me.

37) B) (1) Count II : Violation of United States Constitution (8th Amend.) Cruel and Unusual punishment: Use of excessive force

38) (2) Supporting Facts : In 2018 I was detained in Wyandotte County Jail (F-Pod cell# 41 or # 42), I was handcuffed and shackled (behind my back) then aggravatedly assaulted and batterized by Wyandotte County Jail deputy sheriffs. I was cuffed up behind my back, batterized, then dragged down a flight of stairs, then assaulted and batterized again once at the bottom of the stairs. Bodily harm was being inflicted upon me until I began coughing up blood (see body cameras of officers). Then these deputies put their knees on my neck and back aphyxiating me. I kept telling them that I couldn't breathe but they continued until I was on the verge of fainting and other inmates began kicking on their doors telling them to stop trying to kill me. (see body cams), I beg them to stop as I pled for my life. Deputy Lobner, Deputy Schuler, and Deputy John Doe were the deputies who maliciously committed these actions against me without any warranted or justifiable cause. The actions of these officers were

not being used in effort to maintain or restore discipline but was instead being used to maliciously and sadistically injure and cause bodily harm to me. Specific date and time of incident is documented on grievances pertaining to said incident. (please subpeona all grievances pertainin to said incidents in this complaint). Due to the excessive force used, I was coughing up blood for several days and was also denied medical attention by said officers after sustaining physical injuries at the hands of the deputies listed in this count.

39) C) (1) Count **III** : Violation of United States Constitution (8th Amend) Cruel and Unusual punishment : Failure to protect; deliberate indifference; Malicious Wanton physical assault

40) (2) Supporting Facts : On 1-15-15 <u>Sgt E. Sage</u> and <u>Deputy Hibbler</u> did watch 2 other fellow Deputy sheriffs unjustifiably beat plaintiff mercilessly while calling me (plaintiff) racist slurs/names. When plaintiff was begging for his life and for them to stop defendants <u>E. Sage</u> and <u>Hibbler</u> did nothing nor said anything to try to stop deputy <u>William Green</u> and <u>Faulkner</u> from maliciously causing serious bodily harm to me. Defendants E. Sage and Hibbler were fully <u>aware</u> of what was going on. They knew that there was substantial risk I would not only be seriously harmed, but that I was already being harmed with a risk of being even further detrimentally harmed and injured physically were such actions be allowed to continue at that moment. E. Sage is a Sgt. (superior) over the deputies who were beating me. He had the power to not only stop them from beating me while I was already cuffed up behind my back, but prevented them before they started. Defendants <u>Hibbler</u> and <u>E. Sage</u> watched this incident that occurred on 1-15-15 from beginning to end. They both had the power to stop these officers from unjustifiably harming me with "malicious" and "wanton" intent, but instead willfully chose to act with deliberate indifference and willfully allowed the beating and injurious actions against me to continue and ensue. <u>Hibbler</u> and <u>E. Sage</u> failed to respond reasonably to protect me or intervene in me being further put in harms way. Furthermore, I was also threatened to be further assaulted and batterized if I did not keep quiet about the incident by <u>Sgt E. Sage</u> in which he then aimed his taser at me and activated it, threatening me. This not only displays the actions of verbal and physical assault (him physically pulling the taser in an offensive, not defensive, manner) but also the Wanton state of mind that he was in while doing so (see plaintiffs Affadavit). Plaintiff did suffer and sustain physical injuries yet no incident report was written up by these officers. "Why?".. And because of the actions of the officers who held guardianship over me while being a resident in their facility were maliciously and intentionally inflicting extreme grievious bodily harm to me I suffered traumaticly from their Intentional

41) D)(1) Count **IV** : Violation of United States Constitution (8th Amend.)
Cruel and Unusual punishment: Use of excessive force, deliberat indiffenence,
Assault and Intentional Infliction of Emotional Distress, Retaliation.

42) (2) Supporting Facts : On 1-15-15, <u>defendants Sgt. B. Jones</u>, <u>Sgt. E. Sage</u>, and <u>Sgt. S. Brown</u> did all conspire to inflict bodily harm upon plaintiff as a means of both retaliation and intimidation with intentions to prevent me (Plaintiff) from bringing awareness of the beatings to others. Plaintiff declares that after the first beating Sgt. B. Jones, Sgt. S Brown, and E. Sage gave direct orders to their deputies to enter the cell again and "Make him understand who's in charge" (beat him up). Plaintiff declares that I had been physically beaten by these officers on "B shift Nights" 3 times altogether that night, all the while never having the cuffs removed at all, I continued to sustain further injury due to the beatings (See camera, Grievances, Affadavits, and Witnesses). Plaintiff declares that these actions were, as stated by the sgts., designed to "break me". My left eye was swollen shut for days. <u>Sgt S. Brown</u>, <u>Sgt E. Sage</u>, and <u>Sgt B. Jones</u> were aware of my hand cuff cutting deep into the flesh of my wrist whereas lacerations from the cuffs had me bleeding from the wrist severely. Yet they refused to loosen them and instead left them on me throughout the night as they continued to beat up on me and have me suffering in a restraint chair for several hours beyond the max time ordained until other employees began questioning their actions. I was still denied medical attention for several days or more. (See grievances, Cameras, etc.) Plaintiff declares that he did not, at any time display any actions that warranted or justified what these sgts had done to me. And because I refused and continue to refuse dropping the complaint, these defendants listed in this complaint continued to retaliate against me in a brutal physical manner. Hence, being documented and added to this complaint. Plaintiff declares that his life was threatened by these individuals. Plaintiff did sustain serious bodily injuries at the hands of these individual and therefore did have strong reasons to believe that his life was in jeopardy and therefore feared for his life (see mental health records, documentation, and notes written by WCJ Mental health staff).

43) E)(1) Count **V** : Violation of United States Constitution (1rst Amend.)
Prohibiting the right to practice religion freely; (14th Amend.):Violation of equal Protection

44) (2) Supporting Facts : On 1-15-15 <u>deputy Naomi Green-Cortez</u> did with malice confiscate my personal Holy Quran and personal prayer rug all the while being aware that I was not only approved by the facility to have, but also while being aware that I was allowed to have "my" religious text and prayer mat/rug while being in the seg unit. I asked her why she took it when I'm allowed to have these

religious items only to have my religious beliefs and practices mocked, made fun of, and disrespected. I informed one of her superiors about her actions and was told that people in seg "are allowed to have their religious text and tools of worship but none the less it is not they problem." I asked Naomi Green-Cortez to return my religious materials that she took. She then made a disrespectful remark and walked off. My person Quran and prayer rug was never returned to me. My religious material that was confiscated by Deputy Green-Cortez was my personal items that I spent a lot of money on only to have it taken without justifiable cause simply because I'm a Muslim and not a christian (see grievances) Plaintiff and Deputy Naomi Green-Cortez had already been having issues because she continuously told plaintiff that because he is muslim he cannot pray and that by him making prayer is a disrespect to her christian faith and that Wyandotte County Jail is a christian facility. Plaintiff declares that he was being religiously discriminated against and that her actions were done in retaliation with attempts of Intentionally Inflicting Emotional Distress. She never took any of the Christian brothers religious materials from them when they were placed in segregation. I was being discriminated against because of my religious beliefs and spirituality.

45) F)(1) Count VI : Violation of United States Constitution (8th Amend)
Cruel and Unusual punishment: Medical deliberate indifference and deprivation of medical need.

46) (2) Supporting Facts : In 2018 (see grievances for specific date; time), Deputy Mesner did maliciously deny plaintiff Medical assistance by refusing to alert on duty nurses that plaintiff was having severe chest pains, numbness of limbs, headache, and slurring of speech when plaintiff asked him to call a medical response code due to said sympton. Plaintiff lost consciousness only to be beaten and dragged down a flight of stairs by defendants Lobner, Schuler, and John Doe. I request Deputy Mesner to call the many of on duty nurses to come take my vitals or to take me to the clinic but was denied on multiple occasions for over an hour or 2 before I lost consciousness. It was later determined that I may have had a slight heart attack or stroke. Plaintiff declares that I have a family history and record of high blood pressure, heart attacks, aneurisms and strokes. Medical is aware of this and has this on my medical file. I am also on chronic care medical status in Wyandotte County Jail. Deputy Mesner blatantly refused to call medical without justifiable cause and with deliberate indifference (see grievances and video footage, and Affadavit for details). And because of his actions I remained in extreme pain until I finally lost consciousness. Such suffering is unacceptable and my life was being knowingly put at risk by this officer (Mesner) without justifiable reason or cause.

47) G)(1) Count **VII** : Violation of United States Constitution (6th Amend.) Due process; Right to have witness in his favor and impartial judge and right to face accuser; (14th Amend): Equal protection - Racial discrimination

48) (2) Supporting Facts : Defendant Kimberly Holmes was the Head of Classifications and ~~Dropt~~ Disciplinary Hearing Officer. On 1-19-18 plaintiff had a disciplinary hearing, Kimberly Holmes was the D.H.O (Hearing Officer) over this hearing. Utilizing the proper procedures, plaintiff listed several witness, as a defense, to testify to my innocense of the accusations listed as disciplinary charges. Plaintiff's list of witnesses was properly filed and on record. Plaintiff also filed proper paperwork to face his accuser. Kimberly Holmes was well aware of the documented requests. Kimberly Holmes, with malicious and blatant intent, deliberately refused to call any of my witnesses forward to testify on my behalf, Plaintiff's witnesses would've exonerated me of the false charges that were being used to cover up the incident of her co-workers beating him unjustifiably. Plaintiff asked for reasons as to why she Kimberly Holmes refused to call my witnesses in which her reply was (verbatim) "All she needed was the officers' testimony because they are far more credible than inmates." Kimberly Holmes also refused to bring forward my accuser (I requested to face my accuser). Kimberly Holmes then found me guilty and sentenced me to segregation for 60 days which exceeded far more time than the infractions warranted in which this was done with the ulterior motive to keep me in an isolated segregation unit long enough for my body to heal whereas no one would know how badly and brutally beaten I was by the deputy officers. Grievances were written on Kimberly Holmes for racial discrimination (please see grievances and affadavit) in which in retaliation she told plaintiff that if I continued to file complaints on her that she would make sure that I remained in seg indefinately. I filed another complaint and she left me segregation due to me filing another grievance on her actions. In retaliation, Kimberly Holmes made attempts to have other inmates cause bodily harm to plaintiff (see affadavit), as well,

49) H)(1) Count VIII : Violation of United States Constitution (6th Amend) Due process; right to face accuser, right to obtain witnesses ; (14th Amend) equal protection

50) (2) Supporting Facts : Sara Toms, D.H.O and head of classifications; sentenced me to segregation for seeking the aid of medical nurses due to plaintiff having chest pains. Sara Toms held me in segregation for an indeterminate amount of time, that was far beyond the max of any time that can be served for any penalty that can be imposed. Plaintiff declares that she kept plaintiff in segregation with the ulterior motive of hiding the injuries that were inflicted on plaintiff as well as being a way to stop plaintiff from exposing to the public the actions of White deputy

deputy sheriffs beating black inmates unjustiably, without mercy, on a regular and consistant basis. Sara Toms was the disciplinary hearing officer (D.HO) over the hearings that took place in 2018. Plaintiff declares that he did request witnesses and to be faced with his accuser. Plaintiff did fill out and filed the proper documents - inorder to request witnesses, etc. Sara Toms did blatantly, with malice, refused me from having any witnesses testify in my behalf nor did she allow me to face my accuser.s, as well as refusing to admit any video and audio that proved my innocense into evidences. Hence being a partial judge and jury at my hearings with her. Plaintiff filed grievances on Sara Toms actions. Sara Toms retaliated by refusing to let me out of segregation, refusing me access to the law library, refusing me my legal mail correspondances (not allowed to send or receive any legal mail) hence blocking, hindering, and stopping my access to the courts. It is because of Sara Toms that I have now lost my child custody battle to the state of Colorado whereas I have now lost custody of my son permanantly due to Sara Toms actions of confiscating all of my legal mail and refusing to allow me correspondances with the courts via U.S. postage mail; thus blocking me from the courts. (See all grievances) with her tampering with my legal mail, causing plaintiff to miss several statute of limitations in multiple court cases/issues affecting plaintiff's personal livelihood. Plaintiff also declares that due to said actions of Sara Toms, he was forced to cremate his mother (which is against plaintiffs (and mothers) religious and spiritual belief. Sara Toms actions were done not only in and as conspiracy to cover up the incidents that had been taking place but also in malicious, premeditated retaliation. Plaintiff this suffer mental, emotional, physical, and financial injury at the hand (actions) of Sara Toms and administration. Plaintiff declares that he has not and did not have any violatile, combatire, or any other write up disciplinary write ups consisting of violence that would warrant long term seg or administrative seg. Plaintiff had/has no write ups for physical altercations or any form of Hostility or violence. There were no other reasons for these defendants actions besides that of trying to cover-up what they were doing to inmates while smothering inmates attempts to seek help in bringing public awareness to what was happening in the facility of Wyandotte County Jail under the administration of the racially biased Warden Jeffery Fewell and Major Patrick. Sara Toms and Kimberly Holmes are personell of the administration.

51) I) (1) Count IX: Violation of United States Constitution (8th Amend.) Cruel and Unusual punishment; deliberate indifference; inhumane conditions; deprivation of basic human needs

52) (a) Supporting Facts: Deputy Reid did, with malice, refuse plaintiff his entitled food trays that were provided ~~to~~ for Wyandotte County Jail inmates at meal times. Defendant committed these actions against plaintiff several times on purpose with the intentions to cause harm by not feeding him. This was done in retaliation of plaintiff documenting and grieving her ~~wront~~ wrongful actions against inmates. Defendant ~~Dal~~ deputy Reid also refused and/or denied plaintiff medical assistance, showers, clean clothing, and recreation (all on a regular and consistant basis) without any justifiable cause. Plaintiff declares that he was denied basic human needs such as food, clothing, and medical assistance by Ms Reid as a form of retaliation for plaintiff not only grieving her actions against plaintiff but also for grieving her actions in maliciously participating in cause the death of another inmate by the name of Eric Clay Jr. Plaintiff went several days without showers and clothes whereas his health had become affected.

53) J)(1) Count X : Violation of United States Constitution (8th Amend.) Cruel and Unusual punishment ; right to basic human needs, deliberate indifference ; (1rst Amendment): Right to Freedom of speech, right to petition for a redress of grievance.

54) (2) Supporting Facts : Warden Jeffrey Fewell, with malice and in a wanton state of mind, under threat of brutal physical force had me moved to an very unfit and disfunctional cell (B2 #10) that was filled with black mold, no heat in the winter time, and only pumped putrid toilet water from the sink. Warden Fewell was fully aware of the unfit condition of this particular cell (B-2 #10) in which it was officially declared off limits to inmates. Out of spite, and in retaliation, Warden Fewell gave orders to his deputies to move me from a working sanitary cell to the specific cell of B2 #10. This was done on 02-06-15 as a form of punishment for refusing to drop my complaints against the officers who had brutally beaten me. Plaintiff declares that there were several other open cells that Warden Fewell could have place plaintiff in but Fewell gave specific and direct orders to place me in this unlivable cell. This was done with/in attempts to try to "break" plaintiff, through extreme suffering, mentally and physically. Warden Fewell ordered that plaintiff be stripped of all blankets (the window was broken during the winter time whereas frost literally covered several parts of the cell walls and window (on the inside) ) inorder to try to stop me from my pursuit in pushing the complaints I filed. Warden Fewell continued to order that I recieve no showers or recreation inorder to keep me from being able to get warm through the hot water of showers or warmer environments out of the cell. Plaintiff contends that Warden Jeffrey Fewell was

well aware that this specific cell would have ~~poter~~ potential to cause bodily harm and hence was his reason for placing me in that specific cell.

55) On 10-18-19, Warden Jeffrey Fewell, ordered me to be moved into an unfit cell (B2 #04) that had a broken toilet in which had feces and Urine (filled all the way up to the brim, and overflowing) in it for several days before I was even maliciously placed in the cell. The toilet was still filled to the very rim with human waste (overflowing) when I was placed in it at the threat of bodily harm being done to me by the deputies. The floors and walls were engrossed in black mold and fungus as well as the sink not working. Warden Fewell once again placed me in an unfit cell in retaliation of me utilizing the grievance procedure in my efforts of filing complaints about his deputies beating black inmates as well as speaking to a camera crew (who were doing a documentary) about the beatings that were occurring on a regular without justifiable cause. Plaintiff remained in this cell and was forced to eat his meals in such unsanitary conditions. Plaintiff was not allowed to use the toilet (nor any different toilet) for urination or defecation (see grievances); hence I suffered in pain due to me having to hold my bowel movements. Plaintiff declares that such conditions were extremely harsh and that Warden Fewell and Administration (ie Major Patrick and classifications) forcefully subjected plaintiff to these conditions out of spite and in retaliation.

56) In further retaliation, Warden Fewell, and Administration, blatantly refused to inform plaintiff of the death of his mother until days after they were informed of the death of plaintiff's mother by plaintiff's family members. This was done out of spite with the intentions to hurt plaintiff emotionall and mentally. Warden Fewell intentionally waited days later to tell plaintiff of the death of his mother, and due to Fewells actions, plaintiff was not allowed to bury his mother in accordance with our religious and spiritual beliefs and was instead forced to cremate her against our religious belief due to Fewells intentional delay in informing plaintiff of his mother's death. It is protocol for the Warden and Administration to inform inmates of the deaths of their immediate family members once they have been informed or notified by the inmates family members. Plaintiff declares that Warden Fewell did this inorder to try to bait, provoke, and manipulate plaintiff into acts of physical transgression by intentional inflicting emotional distress upon plaintiff in a malicious wanton fashion and as a form of retaliation.

57) K) (1) Count XI : Violation of United States Constitution (14th Amend): Equal protection ;(8th Amendment): Cruel and Unusual punishment

58) (2) Supporting facts : Sgt. Harmon and Captain Russel were fully aware of the injuries inflicted upon plaintiff by fellow deputy officers. Sgt Harmon and Captain Russel conspired with other officers and WCJ Administration to smother evidence, withhold evidence, and to hinder evidence of officers brutally beating the plaintiff from being collected and exposed, in order to cover up the truth of the incidents of unlawful, unwarranted, unjustifiable, and malicious beatings that had been regularly occurring for a long time in Wyandotte County Jail.

It is protocol of the Wyandotte County Jail facility to document any evidence via photographs, video ; audio, as well as written reports of any physical violatile incidents that occur between inmate to inmate, officer to inmate, and/or officer to officer especially when serious injuries were caused due to these altercations and incidents. This is done in which evidence is preserved for the purposes of prosecution shall the individual(s) who were victimized wish to file criminal charges against the alleged perpetrater. (ask any personell who works in the capacity as a deputy or in administration at Wyandotte County Jail).

Yet, in this matter, these 2 defendants ( Harmon and Russell) who not only had the means, power, and legitimate reason to do so, instead acted with deliberate indifference, and refused to document and photograph the serious grievous injuries that were inflicted upon plaintiff, with the intentions to keep such physical evidence of the brutal excessive force (used by their fellow friends and deputies) suppressed. Plaintiff contends that he did write several request to have his injuries photographed and preserved. Plaintiff did inform them that he wanted charges filed on his abusers. Plaintiff declares that both defendants saw my eyes swollen shut during the time I was in seg several days after the incident and both knew that these injuries were sustained from the incident of the officers unjustifiably beating me. Yet they still refused to document (photograph injuries) evidence because of it exposing the unlawful brutality that was inflicted upon plaintiff by their friends/co-workers. Sgt Terrazzas ; after a week had passed, finally took photos of my swollen face and eyes down in the intake section of the facility. (See photos, grievances, Etc, also subpoena Sgt Terrazzas testimony). Plaintiff states that he has an equal right to have the same due process as other civilians, inmates, and United States citizens and therefore had a right to have evidence documented and had a right to seek criminal prosecution in which Plaintiff was denied these request by these 2 defendants as well as others.

59) Plaintiff contends that he was being treated arbitrarily different from other inmates who uses the same procedural protocols when they have been physically batterized. I also asked Sgt. Harmon to call medical so that they may attend to my injuries but was refused by Sgt. Harmon for fear of them documenting and having my injuries on record in the medical wing. Captain Russell did the same, as well as refused to feed me properly during my participation in my religious month of Ramadhan, despite my several request to correct such matters. Plaintiff contends that the actions of these officers were done maliciously, in a form of spite, with deliberate indifference, in retaliation, and as a form of punishment because of the filed complaints on their boss, co-workers, and friends.

60) L (1) Count XII : Violation of United States Constitution (8th Amend) Cruel and Unusual punishment

61) (2) Supporting Facts: Plaintiff declares that, because of plaintiff's refusal to cease documenting and filing legitimate complaints on the malicious violatile and brutal actions of the B-2 day shift and Night shift officers beating black inmates, Major Patrick did continue to retaliate against plaintiff whereas plaintiff was continuously sustaining both mental and physical injury at the orders given to deputies by Major Patrick, Warden Fewell, and Administration. Major Patrick did threaten to leave plaintiff in seg "until he rots" unless I cease in Writing his officers up (for the multiple beatings on black inmates Unjustifiably) along with writing the media and public about the injustices that are taking place in Wyandotte County Jail. Because I refused to cease; in properly documenting and filing complaints, Major Patrick retal retaliated against plaintiff by Keeping him in long term segregation (without any write-ups or justification), ceasing all plaintiff's incoming and outgoing mail, confiscating all of plaintiff's hygiene; denied plaintiff the law library and access to the legal courts, as well as his continuity in trying to hurt and harm plaintiff both physically and mentally. Plaintiff contends that the actions of Major Patrick were injurious to plaintiff's health whereas plaintiff was treated So "poorly and harshly" that plaintiff had to go on a 9 day hunger strike inorder to finally obtain medical treatment and bring attention and awareness to other personel in Wyandotte County Jail due to Major Patrick and Warden Fewell stripping all forms of communication to the public, courts of law, and outside society away from

me. Major Patrick did threaten to not only hurt plaintiff and get away with it due to plaintiffs' placement in segregation, but he also threatened to kill plaintiff when he sees plaintiff on the streets. Due to how plaintiff was being treated, along with the injuries that were being sustained, Plaintiff not only feared for his life but truely believed that Major Patrick would eventually try to kill me and had the means to do so. (See medical records and mental health notes). Plaintiff declares that Major Patrick's actions against plaintiff caused plaintiff emotional, mental, and physical injury and hardships and that his actions violated plaintiffs' 8th amendment right to be protected from cruel and unusual punishment as well as plaintiffs' 14th amendment. Plaintiff contend that Major Patrick acted with deliberate indifference and in retaliation against plaintiff.

62) M) (1) Count XIII : Violation of United States Constitution (1rst Amendment) right to petition government for a redress of grievance; (8th Amendment) Cruel and Unusual punishment ; (14th Amendment) due process of law, Equal protection of laws.

63) (2) Supporting Facts: Plaintiff contends that Lt. Boxton and Detective Carver were the Internal Affairs of Wyandotte County Jail and were under specific orders of Warden Jeffrey Fewell. Plaintiff declares that he wrote several letters and grievances to Internal Affairs asking them to investigate the incident that occurred on 1-15-15 as well as to take photos of the injuries sustain by plaintiff due to the alleged incident. Internal Affairs refused to investigate because of the incident involved fellow friends and deputies of the Internal Affairs. Plaintiff also informed them that he wanted to file criminal charges against the officers who had physically brutally beat him, Internal affairs refused to file my complaint and request with the District Attorney's Office. because of the charges being filed on their friends (fellow deputies). Plaintiff contends that were it an inmate beating an officer, then Internal Affairs, and administration would have quickly filed criminal charges with the D.A's office. It would be the same for an inmate on inmate act of violence. But when it comes to the officers beating inmates, investigations are not initiated, photos of evidence are not taken, Evidence is not collected, and the victims (inmates) are being blocked from filing criminal charges through the proper channels on the victimizers (offending officers / deputies). And because of the Internal Affairs acting with deliberate indifference and not following protocol and ignoring the continous acts of violence being caused by these particular officers,

plaintiff continued suffering at the hands of these officers in retaliation. Plaintiff further contends that it is on file and record that these deputies had multiple complaints and grievances on them, by multiple inmates, for using such malicious excessive force. Internal Affairs were well aware of the multiple complaints on these officers actions. And because the officers were friends of the Internal Affairs there was no fear of accountability in which officers did continue to harm plaintiff. Internal Affairs Buxton and Carver were aware of the dangers and harm that would come to plaintiff shall defendants, who beat plaintiff, continuously be allowed to maintain physical contact with plaintive but still refused to take preventive measures in keeping victim and victimizer seperated. Plaintiff has a right to be protected from being harmed by use of malicious and brutal excessive force. Plaintiff has a right to file criminal charges against perpetraitors who has brutally beaten him causing serious injury (see grievances, letters, and medical bills). Plaintiff has a constitutional right to be treated equally as any other citizen, inmate, or deputy when it comes to basic human needs, due process of the law, and personal health. Plaintiff furthermore contends that Internal Affairs adamently and maliciously blocked me from filing criminal charges against their officers by blocking my access to the D.A's office.

(64)

N) (1) Count XIV : Violation of United States Constitution (8th Amend,) Cruel and Unusual punishment; (14th Amend) equal rights protection

(65)

(2) Supporting Facts: Undersheriff Larry Roland and Sheriff Donald Ash did treat plaintiff with deliberate indifference and with a negligence so severe that it allowed several incidents of bodily harm and detrimental transgression to be continuously inflicted upon plaintiff. Whereas several incidents could have been prevented and plaintiff protected from injurious bodily harm. Plaintiff contends that he had written Undersheriff Roland and Sheriff Donald Ash several letters of complaint along with grievances; bring them "awareness" to the detrimental actions, of their deputies and other subordinates, that were being inflicted upon plaintiff as well as other inmates. The Undersheriff and Sheriff maliciously displayed "deliberate indifference" when pertaining to the well-fare and health of plaintiff (and other victimized inmates) who were housed in their facility and under their guardianship and care. Larry Roland and Donald Ash were fully aware of the multiple incidents that were taking place in their facility. Plaintiff contends that once the Under-

Sheriff and Sheriff Ash had been made aware of the matters, that they both had an obligation to investigate and insure the safety of plaintiff (and other inmates) that were housed in their facility. Once Undersheriff Roland and Sheriff Donald Ash were made aware of the brutal attacks being made on inmates by facility deputies, they were obligated to launch a thorough investigation into such matters as well as install preventive measures to stop such unjustifiable unwarranted actions from re-occurring (See letters and grievances); and not turn a blind eye to such detrimental and hostile situations. Especially when they have the necessary power to do so.

66) Plaintiff contends that, due to Undersheriff Roland and Sheriff Ash's neglect and failure to take such matters seriously, plaintiff was further forcefully subjected to bodily harm and other form of cruel and unusual punishments that should have and could have been prevented had they not displayed deliberate indifference towards plaintiff. And because of the actions of these individuals (or lack thereof) plaintiff was forcefully subjected to pain and suffering on many different multitudes and levels both physically and mentally. Plaintiff contends that the actions of these officers constitute negligence and breach of duty, discrimination, and deliberate indifference for ignoring and failing to react to a widespread safety issue. The actions of these officers are in violation of the 8th Amendment and 14th Amendment.

67)

O)(1) Count XV : Violation of United States Constitution (Amendment 14)
Rights to equal protection of laws

68)

(2) Supporting Facts: Plaintiff declares that defendants William Green, Faulkner, Lobner, John Doe, Schuler, Mesner, Green-Cortez, Sage, Jones, Reid, Sara Toms, Hibler, Patrick, Brown, Kimberly Holmes, Buxton, Carver, Roland, and Ash did, willingly, and maliciously violate plaintiffs rights to equality protection with their actions as mentioned in the complaints and grievances as mentioned. Plaintiff contends that he has a right to be equally protected by the laws of the United States Constitutional amendments such as being protected from bodily harm and retaliation from using the 1rst amendment right to petition government for a redress of grievances. Plaintiff contends that retaliation is the nexus that connects and relates each defendant and action mentioned in this complaint and other articles of grievances together as one complaint, for were it not for the retaliation due to plaintiff grieving the incident of 1-15-15, the other incidents of retaliation between 1-15-15 thru 1-1-20 would not have occurred in the consistant continuous fashion that they have. Plaintiff contends that he has a Constitutional right to petition for redress of grievances.

69) Such actions are a protected conduct. Yet the defendants did retaliate against plaintiff because of his utilization of this righteous conduct. The defendants did inflict severe injury upon plaintiff so much that the actions of the defendants would cause an average person to stop or cease from utilizing the grievance system process. Plaintiff declares that defendants actions were done in retaliation of plaintiffs continuum in grieving their actions of on going retaliations in attempts to force me to drop complaints that were being filed stemming from the very first incident that occurred on 1-15-15 (See grievances, etc).

70) P)(1) Count XVI : Violation of United States Constitution (14th Amendment) Equal Protection of the law.

71) (2.) Supporting Facts: Plaintiff claims that he ~~recieved~~ received harsher treatment at his disciplinary hearings because of his race and religious preferences. Defendants Sara Toms and Kimberly Holmes treated plaintiff arbitrarily different than other inmates whereas he was sentenced to harsher sentences because ~~bec~~ he was black and they were white, as well as he being Muslim and the white inmates practicing christianity (See grievances). Plaintiff was given more segregation time than the caucasian inmates who either had the same or even worse disciplinary write up infractions. Plaintiff has no hostile (physical write ups) disciplinary tickets yet continuously received more time in seg than Caucasian inmates who were having hearings ~~&~~ and found guilty of fights, weapons, stealing, and battery against L.E.O (Law enforcement officers) or inmates.

Warden Fewell and Major Patrick would let white inmates with violent ~~write~~ write ups out of seg in minimum time served but refused to let plaintiff out ~~into~~ of segregation in which plaintiff has no violent write ups. Plaintiff further contends that the administration (Fewell, Patrick, Toms, Holmes) racially

discriminates against black inmates as well as target African Americans in segregation placement which is why African Americans make up ~~is~~ a greater proportion of those detained in Wyandotte County Jail's segregation unit than those detained in Kansas County Jails generally. (See McCray v. Bennett, 467 F. Supp 187 ; *Santiago v. Miles, 774 F. Supp 775 ; Johnson v. California 543 U.S. 499 (2003) ).

## CLOSING SUMMARY

72)
 Plaintiff contends that each defendant listed in this complaint personally participated, while acting under the color of state law, in forcefully subjecting plaintiff to, as well as, inflicting cruel and unusual punishment upon plaintiff ~~and~~ willfully, knowingly, and while being fully aware of their actions of violating plaintiff and plaintiff's 14th Amendment rights to equality and 8th Amendment right to protection against cruel and unusual punishment. Plaintiff also contends that his 1rst Amendment rights to practice his religion freely and exercise freedom of speech as well as petitioning for a redress of grievances were violated, also.

73) Plaintiff contends that each defendant listed in this complaint was fully aware of their actions as they were committing them against plaintiff. Plaintiff contends that the actions of each defendant listed were done with malice, deliberate indifference, in a wanton manner , and in retaliation with intentions ~~to~~ to harm plaintiff.

74) Plaintiff contends that the actions of the listed defendants in this complaint did cause plaintiff bodily harm and physical injury, mental distress, and emotional damage as well as financial difficulties and problems within the relationship between plaintiff and his family.

75) Plaintiff contends that he did, within his legal right, utilize the grievance procedure to redress grievance issues, in which he did file complaints all the way up the chain of command and beyond seeking remedial relief. Plaintiff did exhaust all remedies of the grievance procedure (see attached exhibits). Plaintiff believes that he did abide by

the "Martinez Report" regulations in doing so.

76) Plaintiff contends that he did suffered actions of retaliation from the defendants listed in this complaint due to plaintiff utilizing his right to petition government for a redress of grievances pertaining to officers (deputy sheriffs) using brute physical excessive force to inflict bodily harm on plaintiff unjustifiably. The redress of grievance is a "protected conduct" entitled to plaintiff.

77) Plaintiff contends that, because of his use of that "protected conduct", defendants retaliated against him physically, causing injury as well as assaulting plaintiff on many other different levels and multitudes, with intentions to hinder, deter, prevent, and intimidate plaintiff from his pursuit in seeking to expose the violative actions of deputy sheriffs towards inmates.

78) Plaintiff contends that the actions of retaliation were so adverse and detrimental to plaintiff's health that it would stop an average person from continuing in their pursuit of seeking justice through the grievance procedures. And that for fear of losing his life, plaintiff continued in his efforts in documenting the actions of these defendants and publicizing his complaints so shall plaintiff lose his life while being under the custody, detainment, and guardianship, someone would be aware of the actions of these deputies' transgression against plaintiff and know what had happened to him. Plaintiff contends that he has a constitutional right to be protected against bodily harm, deprivation of basic needs, racism, and retaliatory acts of retaliation (see Wakinekona V. Olim 460 U.S. 238; Cleggett V. Pate 229 F. Supp. 818; Calhoun V. Hargone 312 F. 3d 730; Witte V. Wisconsin D.O.C 434 F. 3d 1031.)

79) Plaintiff contends that grievances and letters of complaint were mailed to the appointing authorities Undersheriff Larry Roland and Sheriff Donald Ash making them aware of the malicious transgression and unjustifiable unwarranted use of brutal excessive force being wantonly deployed on plaintiff (and other black inmates)

by their deputy officers. The appointing authorities were well aware and knowledge-
able of their subordinates criminal actions yet chose to act with deliberate indifference
by failing to take the initiative to stop ~~that~~ what had not only continued to
happen but still continues to happen in these present moments. Such negligence
caused plaintiff to be further inflicted with both physical injury and mental and
emotional harm. Such negligence cannot simply be overlooked as being harmless
when preventive measures could have been install in place to protect plaintiff
from further detrimental harm and unjustifiable physical abuse that was being
inflicted upon plaintiff.

80) Plaintiff contends that he did suffer and sustain physical injuries as well as
emotional distress, at the hands of all the defendants listed in this complaint. And
that such actions were done to plaintiff unjustifiably in a malicious wanton manner
(see grievances, video footage, medical record of K.U. optometrist). Plaintiff states
that he has met the requirements of both subjective and objective components
of an 8th Amendment Constitutional rights violation (cruel and unusual punishment)
as mentioned in the "Hudson test", as well as the actual injury requirements as
mentioned in "Lewis V. Casey".

81) Plaintiff contends that each defendant, in their own individual capacity, knew
right from wrong as humanbeings and that each defendant had made their own
"personal" choice (on their own free will) to maliciously assault plaintiff in the
many different methods, forms, and fashions with wanton intent to harm without
justifiable cause. And in doing so each defendant violated plaintiffs' 8th
Amendment and 14th Amendment constitutional right (all while acting under
the color of state law).

82) I, Plaintiff (Durayl Vann) did utilize the inmate grievance procedure at "WCJ"
to try to solve the grievable issues filed in the complaints. In doing so, more violatile
incidents arose in the form of physical retaliation which led to the onslaught of attacks

and more defendants getting involved which led to more complaints/grievances being filed. These series of incidents continuously occurred throughout the time frame of 1-15-15 thru 1-01-20. All grievances were filed up the proper chain of command and were either denied or ignored (not responded to). Plaintiff did appeal all decisions/denial of grievances up the proper chain of command thus exhausting all remedies. Plaintiff contends that though he cannot remember and/or list many specific dates in this complaint, he does declare that all the proper and specific dates as requested by the courts are listed and written on all grievances that were filed by plaintiff and will be available at the "discovery" stage of this court process

83)
** Duly note that Plaintiff alleges that the defendants are believed to be joined properly in each alleged count listed in this complaint being that a question or fact common to the defendants listed in each specific count will arise in that specific count; And that all counts listed in this complaint do arise out of the same series of transactions and occurrences that arise in this action, as a whole, due to the continuous order of re-occurring actions of retaliation in which all counts listed were derived from. Furthermore Plaintiff contends that he believes that all defendants and their alleged actions are connected through their multiple acts of retaliation that stemmed from one incident that occurred on 1-15-15. Were it not for this incident, the other incidents alleged in this complaint would not have occurred. And therefore Plaintiff believes that a nexus does exist and is demostrated with respect to all defendants named in this complaint/Action.

## Plaintiff's State of Claim

84)

Plaintiff reallege and incorporate by reference paragraphs #1-#103 and hereby state claim that all incidents mentioned in/within the numbered paragraphs #35-#71 of this complaint are violations of plaintiffs' constitutional rights as mentioned in this complaint. Plaintiff declares that he is entitled to relief due to the violations of his constitutional rights. And therefore gives the proper courts to rule in plaintiff's favor due to such violations.

85) Plaintiff claims that his 8th Amendment, 14th Amendment, 6th Amendment, and 1rst Amendment were violated by the defendants listed in this complaint and that he is entitled to relief by and through the courts.

86) Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs described herein. Plaintiff has been and will continue to be irreparably injured by the conduct of the defendants unless this court grants the declaratory relief which plaintiff seeks

## Prayer for Relief

87) Wherefore, plaintiff respectfully prays that this court enter judgement granting plaintiff:

88) A declaration that the acts and omissions described herein violated plaintiffs rights under the Constitution and laws of the United States.

89) Compensatory damages in the amount of $690,000.00 against each defendant, jointly and severally;

90) Punitive damages in the amount of $41,400.00 against each defendant;

91) A jury trial on all issues triable by jury;

92) Plaintiffs cost in this suit;

93) Any Additional relief this court deems just, proper, and equitable.

Dated 1-27-21

Respectfully Submitted,

Durayl Vann #76997

Lansing Correctional Facility

P.O. Box 2

Lansing, Ks 66043

94)

## Verification

I have read the foregoing complaint and hereby verify that the matters alleged therein are true, except as to matters alleged on information and beliefs and as to those, I believe them to be true. I certify under penalty of penjury that the foregoing is true and correct.

X Durayl Vann #76997

Durayl Vann 76997

95)

# D. PREVIOUS LAWSUITS AND ADMINISTRATVE RELIEF

96) (1) Have you begun other lawsuits in state or federal court dealing with the same facts involved in this action or otherwise relating to the conditions of your imprisonment?  ☑ yes ☐ No

If your answer is "yes", describe each lawsuit:

A) Parties to previous lawsuit:

Plaintiffs: Durayl Tyree Vann

Defendants: Ash, et al

B) Docket Number: Case NO 15-3192-JAR in the District Court of Kansas

97) C) Disposition: Dismissed without prejudice, Plaintiff did appeal court ~~decision~~ decision but never recieved a response and therefore refiled complaint while being under the impression that case was still pending for fear of violating the statute of limitations.

98) D) Issues raised: Constitutional Violations of plaintiffs 8th Amendment, 14th Amendment, and 1rst Amendment rights.

99) E) − − −2015 was when Case NO 15-3192 -JAR was filed.

100) F) Approximate date of disposition: 11-15-2016

101) (1) I have previously sought informal or formal relief from the appropriate administrative officials regarding the acts complained of in Part C: Yes ☑ No ☐

102) If your answer is "Yes", briefly explain/describe how relief was sought and the results:

Plaintiff contends that he properly utilized the grievance procedures and systems through Inmate Communication Forms, Written Complaints, and grievances (exhausting all remedies up the "chain of command") seeking solutions and administrative relief in which no administrative relief was granted nor any issues of complaint rectified or dealt with accordingly (see attached exhibits

103)                REQUEST FOR RELIEF

I believe that I am entitled to the following relief:

Compensatory damages: $690,000.00

Pain and Suffering (while being in Seg) = $213,500 ($3,500 a day)

Nerve and Optical damage (Irrepairable) = $300,000.00

Nerve damage to hand = $77,000.00

Headaches due to trama = $50,000.00

Mental anguish (fear, ptsd, Etc) = $50,000.00

Punitive damages: 41,000.00 from each defendant for their actions of abuse

x Durayl Vann   76997
   Signature of plaintiff