## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**DURAYL TYREE VANN,**

     **Plaintiff,**

     v.                           **CASE NO.  20-3200-SAC**

**JEFFREY FEWELL, et al.,**

     **Defendants.**

### MEMORANDUM AND ORDER

Plaintiff brings this *pro se* civil rights action pursuant to 42 U.S.C. § 1983.  Although Plaintiff is currently incarcerated at the El Dorado Correctional Facility in El Dorado, Kansas, the events giving rise to his Complaint occurred during his detention at the Wyandotte County Jail ("WCJ').  The Court granted Plaintiff leave to proceed *in forma pauperis*.  The Court entered a Memorandum and Order and Order to Show Cause (Doc. 9) ("MOSC"), granting Plaintiff an opportunity to show good cause why his claims regarding incidents occurring in 2015 should not be dismissed as barred by the applicable statute of limitations.  The Court also granted Plaintiff an opportunity to file an amended complaint to cure the deficiencies regarding his remaining claims.  This matter is before the Court on Plaintiff's response (Doc. 11) and for screening his Amended Complaint (Doc. 13) under 28 U.S.C. § 1915A.  The Court set forth in detail in the MOSC the allegations in Plaintiff's Complaint and the Court's screening standards.  (Doc. 9, at 1–6.)

### I.  Claims based on incidents occurring in 2015

The Court found in the MOSC that it plainly appears from the face of the Complaint that Plaintiff's claims based on incidents in 2015 are subject to dismissal as barred by the applicable two-year statute of limitations.  Plaintiff filed his Complaint on July 24, 2020.   It thus appears

that any events or acts of Defendants taken in connection with Plaintiff's claims regarding incidents in 2015 took place more than two years prior to the filing of Plaintiff's Complaint and are time-barred. *See Fratus v. Deland*, 49 F.3d 673, 674– 5 (10th Cir. 1995) (district court may consider affirmative defenses *sua sponte* when the defense is obvious from the face of the complaint and no further factual record is required to be developed). The Court also found that Plaintiff has not alleged facts suggesting that he would be entitled to statutory or equitable tolling.

In his response, Plaintiff alleges that he should be excused from the statute of limitations because he was waiting on a response from the court or a decision on appeal in his prior case. (Doc. 11–1.) Plaintiff also alleges that Wyandotte County deputy sheriffs and personnel attempted to prevent him from refiling his case and that the incidents occurring in 2015 are related to his retaliation claims. *Id*. at 4–5.

The prior case Plaintiff refers to is *Vann v. Ash*, Case No. 15-3192. In that case, the court ordered the preparation of a *Martinez* Report, which was filed on July 22, 2016. *Id*. at Doc. 39. Defendants then filed a motion to dismiss with memorandum in support. *Id*. at Docs. 40, 41. The court ordered Plaintiff to respond to the motion to dismiss by September 6, 2016. *Id*. at Doc. 43. Plaintiff filed a motion for extension of time, and the court granted Plaintiff an extension of time until October 21, 2016, to respond to the motion to dismiss. *Id*. at Docs. 46, 47. The order granting the extension provided that "[t]here will be no further extension of this deadline granted." *Id*. at Doc. 47. Plaintiff failed to respond by the deadline, and the court entered a Memorandum and Order granting the motion to dismiss on November 14, 2016. *Id*. at Docs. 48, 49.

Plaintiff submitted a letter to the court on December 17, 2018—two years after the case was dismissed—asking the Court whether his case was dismissed with or without prejudice and inquiring as to the applicable statute of limitations. *Id*. at Doc. 50. The court entered an order advising Plaintiff that his case was dismissed without prejudice and finding that Plaintiff's inquiry regarding the applicable statute of limitations calls for legal advice, which the court may not provide. *Id*. at Doc. 52. Plaintiff filed a motion for reconsideration, which the court denied on February 21, 2019. *Id*. at Docs. 53, 56. The docket in Case No. 15-3192 does not contain a notice of appeal or any other pleadings after the February 21, 2019 Memorandum and Order denying Plaintiff's motion for reconsideration.

Generally, a Kansas court cannot extend the limitation period except as provided by statute. *McClain v. Roberts*, 304 P.3d 364 (Table), 2013 WL 3970215, *3 (Kan. App. Aug. 2, 2013) (citing *Underhill v. Thompson,* 158 P.3d 987, 995 (Kan. App. 2007)). Kansas law provides that a prisoner is presumed to be a person under a legal disability so that the limitation period would be tolled until the disability is removed (here, when the person is released). K.S.A. 60–515(a). However, the statute further provides that "if a person imprisoned for any term has access to the court for purposes of bringing an action, such person shall not be deemed to be under legal disability." K.S.A. 60–515(a). Therefore, to be entitled to tolling under K.S.A. 60-515(a), a prisoner must have been denied access to the courts such that he could not file within the limitation period, something that Plaintiff has not shown. *McClain,* 2013 WL 3970215 at *3 (citing *Bulmer v. Bowling,* 4 P.3d 637, 639 (Kan. App. 2000); *Parker v. Bruce,* 109 F. App'x 317, 319 (10th Cir. 2004) (unpublished opinion)).

Kansas also recognizes the doctrine of equitable tolling but seems to apply it only where defendants did "something that amounted to an affirmative inducement to plaintiff to delay

bringing the action." *Friends University v. W.R. Grace & Co.,* 608 P.2d 936, 941 (Kan. 1980) (quoting *Rex v. Warner,* 332 P.2d 572 (Kan. 1958)).  The record fails to support a claim that Defendants affirmatively induced Plaintiff into delaying his filing of this suit.

In addition, at least one Kansas appellate court has applied the equitable tolling standard for habeas cases in the context of a § 1983 action.  *See McClain*, 2013 WL 3970215 at *3.  That standard provides for equitable tolling where a litigant has been pursuing his rights diligently and some extraordinary circumstance prevented timely filing.  *Id*. (citing *McQuiggin v. Perkins,* 569 U.S. 383, 391 (2013) (quoting *Holland v. Florida,* 560 U.S. 631 (2010))). Plaintiff does not demonstrate any extraordinary circumstance that would entitle him to equitable tolling of the limitation period.

The Court finds that Plaintiff has not shown good cause why his claims from 2015 should not be dismissed as barred by the statute of limitations.  Plaintiff failed to respond to the motion to dismiss in his prior case and waited two years to seek clarification regarding his dismissal and the applicable statute of limitations. The record in his prior case does not reflect an appeal of the decision, and Plaintiff waited almost a year and a half after that case was closed before he filed his current case on July 24, 2020.

Plaintiff continues to assert claims in his Amended Complaint based on incidents in 2015. In Count I of his Amended Complaint he asserts that Defendants Green and Faulkner used excessive force on him on January 15, 2015.  In Count III he claims that Defendants Sage and Hibbler failed to intervene during the January 15, 2015 incident.  In Count IV, Plaintiff alleges that on January 15, 2015, Defendants B. Jones, Sage and Brown conspired to inflict bodily harm on Plaintiff.  In Count VII, Plaintiff alleges that Defendant Holmes denied him due process and equal protection during his disciplinary hearing on January 19, 2015, and retaliated against him

for filing grievances regarding his disciplinary sentence.  Plaintiff's Count X includes a claim that on February 6, 2015, Defendant Fewell retaliated against Plaintiff by placing him in a cell with black mold, no heat and unfit drinking water.  Plaintiff alleges that the cell—B2 #10—was officially declared off limits to inmates.  In Count XI, Plaintiff claims that Defendants Harmon and Russell refused to document his injuries from the 2015 incident, and Sgt. Terrazzas finally took pictures a week later.  In Count XIII, Plaintiff claims that Defendants Buxton and Carver failed to properly investigate the 2015 incident and refused to seek criminal charges against the officers involved.  Counts I, III, IV, VII, XI and XIII, and the claim based on his placement in a cell in 2015 in Count X, are dismissed as barred by the statute of limitations.

**II.  Claims based on incidents occurring in 2018 and 2019**

The Court also granted Plaintiff an opportunity to file an amended complaint containing any claims that are not barred by the statute of limitations.  The Court cautioned that any claims of retaliation must contain specific facts showing retaliation because of the exercise of Plaintiff's constitutional rights.  Conclusory allegations that lack facts demonstrating improper retaliatory motive are insufficient.

Plaintiff claims in Count II of his Amended Complaint that Defendants Lobner, Schuler and Deputy John Doe used excessive force and assaulted Plaintiff in 2018.  Plaintiff alleges that the specific date and time of this incident is documented in his grievances.  Plaintiff also alleges that these officers denied him medical care for the injuries he sustained.

In Count VI, Plaintiff alleges that Defendant Mesner denied Plaintiff medical assistance in 2018 when he was experiencing chest pains, numbness of limbs, headache and slurring of speech.  Plaintiff alleges that he lost consciousness and was beaten and dragged down a flight of stairs by Defendants Lobner, Schuler, and John Doe.  Plaintiff alleges that the exact date of this

incident is set forth in his grievances.  It appears as though Count II and Count VI may be based on the same incident.

In Count VIII, Plaintiff alleges that Defendant Toms, D.H.O. and head of classifications, sentenced Plaintiff in 2018 to segregation for seeking the aid of medical nurses for chest pains. Plaintiff alleges that he was kept in segregation longer than normal to hide his injuries.  Plaintiff alleges that he was denied due process at his disciplinary hearing and Defendant Toms retaliated against Plaintiff for filing grievances.

In Count IX, Plaintiff alleges that Defendant Reid denied Plaintiff his food tray on several occasions and denied Plaintiff medical assistance, showers, clean clothing and recreation on a regular and consistent basis in retaliation for Plaintiff filing grievances against her.

The Court dismissed the claim in Count X based on Plaintiff's placement in an unsanitary cell in 2015.  Count X also contains a claim that on October 18, 2019, Defendant Fewell ordered Plaintiff to be moved to another unfit cell—B2 #04.  Plaintiff alleges that the toilet was broken and contained feces and urine filled to the brim and overflowing for several days.  Plaintiff alleges that the floors and walls were covered in black mold and fungus and the sink did not work.  Plaintiff alleges that this was done in retaliation for Plaintiff filing grievances and talking to a camera crew that was filming a documentary.  Plaintiff also alleges that Defendant Fewell blatantly refused to inform Plaintiff of the death of his mother for several days after Plaintiff's family members informed staff of the death.  This prevented Plaintiff from burying his mother in accordance with their religious and spiritual beliefs and Plaintiff was forced to cremate his mother.

In Count XII, Plaintiff claims that Defendant Patrick retaliated against Plaintiff for filing grievances by keeping him in long-term segregation without any write-ups or justification,

ceasing all of Plaintiff's incoming and outgoing mail, confiscating all of Plaintiff's hygiene products, denying Plaintiff access to the law library and the courts, and continuing to harm Plaintiff physically and mentally. Plaintiff alleges that Defendant Patrick threatened to leave Plaintiff in segregation "until he rots" unless Plaintiff ceased writing up his officers and writing the media. Plaintiff alleges that Defendant Patrick threatened to hurt Plaintiff and get away with it while Plaintiff was in segregation and to kill Plaintiff when he sees Plaintiff on the streets. Plaintiff alleges that he feared for his life. Plaintiff's grievance alleges that this occurred around October of 2019. (Doc. 14–1, at 40.)

In Count XIV, Plaintiff claims that Defendants Roland and Ash failed to take action to prevent the abuses being committed by staff at the WCJ after they were made aware of the abuses.

In Count XV, Plaintiff claims that Defendants Green, Falkner, Lobner, John Doe, Schuler, Mesner, Green-Cortez, Sage, Jones, Reid, Sara Toms, Hibler, Patrick, Brown, Kimberly Holmes, Buxton, Carver, Roland and Ash, violated Plaintiff's right to equal protection from bodily harm and retaliation. Plaintiff alleges that Defendants have retaliated against him since the 2015 incident in a "consistent continuous fashion." Plaintiff alleges that these Defendants inflicted "severe injury" upon Plaintiff. The Court finds that Count XV is subject to dismissal for failure to state a claim. The Court cautioned Plaintiff in the MOSC that an "inmate claiming retaliation must allege *specific facts* showing retaliation because of the exercise of the prisoner's constitutional rights." *Fogle v. Pierson*, 435 F.3d 1252, 1264 (10th Cir. 2006) (quotations and citations omitted). Thus, for this type of claim, "it is imperative that plaintiff's pleading be factual and not conclusory. Mere allegations of constitutional retaliation will not suffice." *Frazier v. Dubois*, 922 F.2d 560, 562 n. 1 (10th Cir. 1990). "To prevail, a prisoner must show

that the challenged actions would not have occurred 'but for' a retaliatory motive." *Baughman v. Saffle*, 24 F. App'x 845, 848 (10th Cir. 2001) (citing *Smith v. Maschner*, 899 F.2d 940, 949–50 (10th Cir. 1990); *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998)).  Plaintiff should show good cause why Count XV should not be dismissed for failure to state a claim.

In Count XVI, Plaintiff claims that he received harsher treatment at his disciplinary hearings by Defendants Toms and Holmes.  Plaintiff alleges that Defendants Fewell and Patrick would let white inmates out of segregation sooner even though they had violent write-ups and Plaintiff did not.  Plaintiff alleges discrimination based on his race.

The Court finds that the proper processing of Counts II, VI, VIII, IX, XII, XIV, XVI, and the claim in Count X regarding incidents occurring in 2019, of Plaintiff's Amended Complaint cannot be achieved without additional information from appropriate officials of the WCJ.  *See Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978); *see also Hall v. Bellmon*, 935 F.2d 1106 (10th Cir. 1991).  Accordingly, the Court orders the appropriate officials of the WCJ to prepare and file a *Martinez* Report.  Once the report has been received, the Court can properly screen Plaintiff's claim under 28 U.S.C. § 1915.

**IT IS THEREFORE ORDERED BY THE COURT** Plaintiff's claims in Counts I, III, IV, VII, XI and XIII, and the claim based on his placement in a cell in 2015 in Count X, are **dismissed** as barred by the statute of limitations.

**IT IS FURTHER ORDERED** that Plaintiff is granted until **September 7, 2021,** in which to show good cause, in writing, why his claims in Count XV should not be dismissed for failure to state a claim.  The failure to respond by the deadline may result in dismissal of this claim without further notice.

**IT IS FURTHER ORDERED** that:

(1)      Officials responsible for the operation of the WCJ shall have **thirty (30) days** to prepare the *Martinez* Report.

(2)      Officials responsible for the operation of the WCJ are directed to undertake a review of the subject matter of Counts II, VI, VIII, IX, XII, XIV, XVI, and the claim in Count X regarding incidents occurring in 2019, of Plaintiff's Amended Complaint:

   a.      To ascertain the facts and circumstances;

   b.      To consider whether any action can and should be taken by the institution to resolve the subject matter of these counts in the Amended Complaint; and

   c.      To determine whether other like complaints, whether pending in this Court or elsewhere, are related to these claims in the Amended Complaint and should be considered together.

(3)      Upon completion of the review, a written report shall be compiled which shall be filed with the Court and served on Plaintiff.  The WCJ officials must seek leave of the Court if they wish to file certain exhibits or portions of the report under seal or without service on Plaintiff.  Statements of all witnesses shall be in affidavit form.  Copies of pertinent rules, regulations, official documents, and, wherever appropriate, the reports of medical or psychiatric examinations shall be included in the written report.  Any recordings related to Plaintiff's claims shall also be included.

(4)      Authorization is granted to the officials of WCJ to interview all witnesses having knowledge of the facts, including Plaintiff.

(5)      No answer or motion addressed to the Amended Complaint shall be filed until the *Martinez* Report required herein has been prepared.

(6)    Discovery by Plaintiff shall not commence until Plaintiff has received and reviewed Defendants' answer or response to the Amended Complaint and the report ordered herein.  This action is exempted from the requirements imposed under Fed. R. Civ. P. 26(a) and 26(f).

Copies of this order shall be transmitted to Plaintiff, to the WCJ Sheriff, and to the Wyandotte County District Attorney.

**IT IS SO ORDERED.**

**Dated August 10, 2021, in Topeka, Kansas.**

**<u>s/ Sam A. Crow</u>**
**Sam A. Crow**
**U.S. Senior District Judge**