IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

DURAYL TYREE VANN,

**Plaintiff,**

v.  CASE NO: 20-3200-SAC

JEFFREY FEWELL, et al.,

**Defendants.**

---

## AFFIDAVIT OF SARA TOMS

State of KANSAS )
) ss:
County of WYANDOTTE )

I, the undersigned, Sara Toms, of lawful age and first being duly sworn upon her oath, do state:

1. That I was the Programs and Classification Administrator for the Wyandotte County Detention Center and an employee of the Wyandotte County Sheriff's Office and I have knowledge of the facts stated herein.

2. I have reviewed my files related to the subject matter of this litigation, and the electronic records of the Wyandotte County Sheriff's Office that pertain to the Plaintiff and have attached my statement hereto and incorporate it as if fully set forth herein.

3. The statements contained herein are either based on personal knowledge, and or drawn from records kept in the ordinary course and scope of business of the Wyandotte County Sheriff's Office, and are true and accurate to the best of my knowledge and belief.

**FURTHER AFFIANT SAYETH NAUGHT.**

*Sara Toms*
Sara Toms
Programs and Classification Administrator
Wyandotte County Sheriff's Office

Subscribed and sworn on this 14th day of January, 2022.

**COLLEEN M. HERBST
NOTARY PUBLIC
STATE OF KANSAS**

*Colleen M. Herbst*
Notary Public

My Appointment Expires: 5-1-2025



**Daniel Soptic**
**Sheriff**

# WYANDOTTE COUNTY SHERIFF'S OFFICE

## *MEMORANDUM*

TO: Joni Cole, Legal Advisor to the Sheriff

FROM: Sara Toms, Programs & Classifications Director

DATE: 12/30/2021

SUBJECT: Disciplinary sanctions – review and comparison regarding Inmate D. Vann #47539

### OVERVIEW:

This report is being provided at the request of the Sheriff's Legal advisor as it pertains to the conditions of confinement and the disciplinary sanctions imposed on Inmate Durayl Vann - Booking #2018007606.

Specifically, Inmate Vann alleges that he was sanctioned to disciplinary segregation in 2018 for seeking medical aid for chest pains and that he was kept on disciplinary segregation status longer than normal to hide his unnamed "injuries." Additionally, Inmate Vann alleges that he was denied due process at his disciplinary hearing and that this writer acted out of retaliation for Inmate Vann filing unspecified grievances.

### BOOKING:

Regarding the time frame of this specific allegation, Inmate Vann was booked into the Wyandotte County Adult Detention Center on 10/26/2018 and released from custody on 01/24/2019.

### SYNOPSIS OF INCIDENTS:

During this specific time frame, Inmate Vann received 5 staff tickets on 10/27/18 and 2 staff tickets on 11/01/18. **The incident reports for his violations of facility rules, copies of the staff tickets, medical incident reports, and copies of the disciplinary hearing paperwork are all scanned in his file for this booking.** It is unclear which incident Inmate Vann is referring to, as he was given a staff ticket on both occasions for malingering.

The first incident occurred on 10/27/2018. Inmate Vann was creating a disturbance and encouraging a group demonstration in F Pod at approximately 9:45pm. When shift supervisors arrived on scene, Inmate Vann was lying on the cell floor and was uncooperative with staff. Medical was called and responded, but Inmate Vann refused to cooperate to get his vitals checked. The medical incident report lists that they successfully obtained his blood pressure and it was within normal limits. Additionally, the nurse wanted to take Inmate

Vann to the clinic to conduct an EKG and Inmate Vann refused.

The other incident occurred on 11/01/2018 in the B2 housing unit. Inmate Vann was creating a disturbance in the housing unit and complaining of chest pains around 3:55am. Shift commanders and medical responded to the housing unit. Inmate Vann was evaluated by medical. His blood pressure, pulse, and O2 levels were all within normal range and medical cleared him to remain in his cell. Inmate Vann continued to cause a disturbance within the housing unit and his behavior was recorded on body camera. At approximately 4:37am, a deputy reported that Inmate Vann was laid out on the floor of his cell. Medical responded to the housing unit again and checked his vitals. Medical again confirmed that his vitals were normal and his blood pressure and pulse were lower than the first check. Medical completed incident reports for both times they responded to B2.

## SYNOPSIS OF THE DISCIPLINARY HEARINGS FOR INMATE VANN:

The staff tickets issued for these two incidents were served to Inmate Vann within the required 24 hour timeframe. Inmate Vann signed the staff tickets issued to him on 10/27/18, but refused to sign the tickets issued on 11/01/18.

Inmate Vann was served notice of his disciplinary hearing for the first incident on 10/29/18 at 10:35am, which is within the required 7 days to provide notice from the date of the incident. The inmate's rights at the disciplinary hearing were written on the notice of hearing. The hearing itself was scheduled for 10/30/18 at 12:10pm, which meets the requirement for providing 24 hours notice to the inmate prior to the hearing. At the hearing, Inmate Vann requested the hearing be recorded by body camera and it was. The ticket he received for malingering was dismissed after the disciplinary hearing process was completed. Inmate Vann was provided with a written copy of the of the hearing report and given an appeal form. There is no record of Inmate Vann using the appeal form to appeal the decision of the disciplinary hearing officer.

Inmate Vann was served notice of his disciplinary hearing for the second incident on 11/01/18 at 10:11am, which is within the required 7 days to provide notice from the date of the incident. The inmate's rights at the disciplinary hearing were written on the notice of hearing. The hearing itself was scheduled for 11/02/18 at 12:30pm, which meets the requirement for providing 24 hours notice to the inmate prior to the hearing. Again, the hearing was recorded on body camera and was found guilty of malingering. Inmate Vann was provided with a written copy of the of the hearing report and given an appeal form. There is no record of Inmate Vann using the appeal form to appeal the decision of the disciplinary hearing officer.

## DISCIPLINARY PROCESS:

Courts generally agree that due process is a set of procedures that ensure that the action taken is fair, given the circumstances. Disciplinary action is taken at such times and to the degree necessary to regulate an inmate's behavior within the rules and institutional guidelines and to promote a safe and orderly institutional environment. It is an internal, administrative process that is separate and unrelated to the court system and legal processes for violations of the law.

A formal disciplinary process is used when the rule violation is serious and may include up to 30 days loss of privileges (such as commissary or visitation), assignment to disciplinary housing, and/or loss of good-time credits. According to Wolff v. McDonnell, 1974, due process procedures are required any time an inmate faces a sanction that will change a release date or will result in an inmate being put in segregation for more than a few days.

According to Wolff v. McDonnell, 1974, "written notice of the charges must be given to the disciplinary-action defendant in order to inform him of the charges and to enable him to marshal the facts and prepare a defense." The inmate has the right to be present at the hearing, to call witnesses, and present evidence. Inmates also have the right to assistance in certain cases, such as needing a Spanish language interpreter.

- Inmate Vann was provided with more than 24 hours notice as required by law prior to the disciplinary hearings. Notice was served in person and in writing. Inmate Vann was provided with the date, time, place, description of the incidents, and the identity of the persons involved as required by law. For the first hearing, Inmate Vann requested assistance from another inmate for his hearing, which was denied as the request did not meet the criteria. Inmate Vann requested a witness by the name of "Bruce Tyren" and there is/was no such inmate in custody. Inmate Vann also requested the following staff witnesses: Sgt. Brown and deputies Schuler, Lobner, Baird, "and other officers with body cam at incident." As the incident occurred on the B Nights shift and the hearing was held during the A Days shift, none of the requested staff witnesses were on duty or available at the time of the hearing. The defensive action report written by A/Capt. Brown and the incident reports written by A/Sgt. Baird, A/Sgt. Lobner, Deputy Mesler, Deputy Schuler, Deputy Cortes, and LPN Anosike were available and reviewed as evidence. No record was located on file that Inmate Vann made any witness or other requests for the second hearing.

According to Baxter v. Palmigiano, 1976, inmates have the right to remain silent at the hearing and that silence may be used against him. Even when the disciplinary charges may be the basis of criminal charges, the inmate does not have a right to counsel in the disciplinary hearing.

- Inmate Vann was advised of all of his rights in person and in writing. The disciplinary hearings were recorded by body camera. Inmate Vann chose to make statements and participate in the disciplinary hearing process.

According to Wolff v. McDonnell, 1974, the decision is made by an impartial hearing body and is based on statement of evidence and reasons.

- The hearings were conducted and the decisions made by the Disciplinary Hearing Officer, a civilian employee of the Wyandotte County Sheriff's Office.
- Disciplinary hearings are regularly conducted in the Wyandotte County Sheriff's Office Adult Detention Center by one person, the same person on a consistent basis, who is trained in conducting due process hearings. At the time of Inmate Vann's disciplinary hearings, the same Disciplinary Hearing Officer had been conducting these hearings in the Adult Detention Center since 2017.
- The Disciplinary Hearing Officer was not present at the times of the incidents. The written and video evidence were reviewed days later during the hearing process.

According to Superintendent v. Hill, 1985, the Supreme Court ruled that only "some evidence" is required to support the findings of the disciplinary hearing office.

- The disciplinary hearing office operates under the basis of "preponderance of the evidence." With this process, an inmate may be found guilty when anything over 50% of the evidence indicates guilt. If the Disciplinary Hearing Officer is convinced that it is more likely than not that the inmate is guilty, the preponderance of the evidence base has been met.

- The evidence available in these incidents were: detention center narrative reports written by sworn security staff and medical staff, body camera footage/recordings of the incident, footage/recordings obtained from the housing unit security cameras, and Inmate Vann's own statements. Guilty findings on the violations were based on the information and evidence available at the time of the hearings.
- The hearing and sanction decisions were made only after all available information was reviewed. The Disciplinary Hearing Officer provided Inmate Vann with written reports of the results of the hearings. Inmate Vann was further advised of his right to appeal the decision and provided with appeal forms.

## INMATE DISCIPLINARY HISTORY:

The following table is a list of Inmate Vann's disciplinary history within this facility:

| Code | Rule Violation | Date |
| --- | --- | --- |
| 002 | Battery | 01/16/2015 |
| 019 | Inciting a group demonstration | 01/16/2015 |
| 027 | Refusing to go into or come from a cell or other area | 01/16/2015 |
| 028 | Conduct which disrupts, disturbs, or interferes with the security or orderly operations | 01/16/2015 |
| 027 | Refusing to go into or come from a cell or other area | 02/06/2015 |
| 111 | Failure to abide by the inmate guidelines | 05/08/2015 |
| 122 | Disrespect towards, lying to, and/or harassing an employee | 03/25/2016 |
| 027 | Refusing to go into or come from a cell or other area | 04/26/2018 |
| 009 | Destroying, altering, damaging, or defacing Detention Center property or items related to the security of the facility | 08/12/2018 |
| 122 | Disrespect towards, lying to, and/or harassing an employee | 09/14/2018 |
| 105 | Malingering or faking an illness | 10/28/2018 |
| 019 | Inciting a group demonstration | 10/28/2018 |
| 028 | Conduct which disrupts, disturbs, or interferes with the security or orderly operations | 10/28/2018 |
| 122 | Disrespect towards, lying to, and/or harassing an employee | 10/28/2018 |
| 029 | Interfering with the rights or privileges of other inmates | 10/28/2018 |
| 133 | Creating a minor disturbance | 11/01/2018 |
| 105 | Malingering or faking an illness | 11/01/2018 |
| 124 | Using abusive or obscene language | 07/28/2019 |
| 133 | Creating a minor disturbance | 07/28/2019 |
| 102 | Exchanging food with another inmate | 09/20/2019 |
| 028 | Conduct which disrupts, disturbs, or interferes with the security or orderly operations | 09/25/2019 |
| 027 | Refusing to go into or come from a cell or other area | 10/18/2019 |
| 028 | Conduct which disrupts, disturbs, or interferes with the security or orderly operations | 10/18/2019 |

The list is based on what is listed in BluHorse. It does not include any/all other minor infractions that were written on Inmate Vann's face sheets. For reference, codes 001-050 are Major Violations and codes 100-150 are Minor Violations. The Major Violations carry higher sanctions than Minor Violations. **The incident**

reports for his violations of facility rules, copies of staff tickets, copies of the disciplinary hearing paperwork, and the face sheets are all scanned in his files for each individual booking.

## INMATE BOOKING HISTORY:

The following table is the booking history of Inmate Vann. Records prior to 2012 are not available on the BluHorse JMS.

|    | Booking Date | Release Date |
|----|--------------|--------------|
| 1  | 11/09/2012   | 05/08/2013   |
| 2  | 07/12/2013   | 07/13/2013   |
| 3  | 08/29/2013   | 08/29/2013   |
| 4  | 09/04/2013   | 03/28/2014   |
| 5  | 10/01/2014   | 05/03/2016   |
| 6  | 08/04/2016   | 08/07/2016   |
| 7  | 12/14/2016   | 01/09/2017   |
| 8  | 05/30/2017   | 06/01/2017   |
| 9  | 11/18/2017   | 11/20/2017   |
| 10 | 02/25/2018   | 02/25/2018   |
| 11 | 04/25/2018   | 09/27/2018   |
| 12 | 10/26/2018   | 01/24/2019   |
| 13 | 04/08/2019   | 04/08/2019   |
| 14 | 04/25/2019   | 04/25/2019   |
| 15 | 06/05/2019   | 06/05/2019   |
| 16 | 07/04/2019   | 07/04/2019   |
| 17 | 07/09/2019   | 07/09/2019   |
| 18 | 07/10/2019   | 03/12/2020   |

## VIOLATION COMPARISON:

In 2018, the disciplinary hearing office received a total of 801 disciplinary tickets/reports. Of the 801 tickets, a total of 129 were dismissed because the inmate was released from custody prior to the hearing or there were documentation errors, or because the inmate was found not guilty. The Disciplinary Hearing Officer conducted a total of 647 formal disciplinary hearings.

In 2019, the disciplinary hearing office received a total of 735 disciplinary tickets/reports. Of these, a total of 127 were dismissed because the inmate was released from custody prior to the hearing or there were documentation errors, or because the inmate was found not guilty. The Disciplinary Hearing Officer conducted a total of 450 formal disciplinary hearings.

*Inmate Vann received staff tickets during this specific booking for:*

- 019 – Inciting or encouraging a group demonstration
    - Major Violation on 10/28/18
    - Found Guilty
    - Sanctioned to 15 days Disciplinary Segregation
        - **In 2018**, there were 3 total tickets written for this violation. Of the 3 tickets, all were

given a 15 day disciplinary segregation sanction. NOTE: As you can see from Inmate Vann's disciplinary history, this is not the first time he's been given a staff ticket for this rule violation.
- **In 2019**, there were 2 total tickets written for this violation. Of the 2 tickets, one was dismissed due to not enough evidence and the other was given a 30 day disciplinary segregation sanction.

- 028 – Conduct which disrupts, disturbs, or interferes with the security or orderly operations
  - Major Violation on 10/28/18
  - Found Guilty
  - Sanctioned to 30 days Disciplinary Segregation
    - **In 2018**, there were 99 total tickets written for this violation. Of the 99 tickets, 19 were dismissed. Of the remaining 80 tickets, 18 were given a 30 day disciplinary segregation sanction for the guilty finding.
    - **In 2019**, there were 189 total tickets written for this violation. Of these, 35 were dismissed. Of the remaining tickets, 51 received 14 days or less of disciplinary segregation sanction and 98 received 15 or more days of disciplinary segregation for the guilty finding. 2 were found not guilty and 2 received a loss of privileges sanction.

- 029 – Interfering with the rights or privileges of other inmates
  - Major Violation on 10/28/18
  - Found Guilty
  - Sanctioned to 30 days Disciplinary Segregation
    - **In 2018**, there were 15 total tickets written for this violation. Of the 15 tickets, 0 were dismissed. 2 of these tickets were given a 30 day sanction for the guilty finding.
    - **In 2019**, there were 24 total tickets written for this violation. Of these, 6 were dismissed. Of the remaining tickets, 10 received 14 days or less of disciplinary segregation sanction and 7 received 15 or more days of disciplinary segregation for the guilty finding.

- 105 – Malingering or faking an illness
  - Minor Violations on 10/28/18 and 11/01/18
  - Ticket issued on 10/28/18 was dismissed, as this specific ticket was not entered into BluHorse (documentation error)
  - Found Guilty on the ticket issued on 11/01/18
  - Sanctioned to 7 days Disciplinary Segregation
    - **In 2018**, there were 20 tickets written for this violation.
      - 6 dismissed
      - 6 sanctioned to 4 or less days of disciplinary segregation
      - 6 sanctioned to 5 or more days of disciplinary segregation
      - 1 sanctioned to loss of privileges
      - 1 unknown/undocumented outcome
    - **In 2019**, there were 19 tickets written for this violation.
      - 4 dismissed – one is noted because there was no supporting medical docs
      - 7 sanctioned to 4 or less days of disciplinary segregation
      - 8 sanctioned to 5 or more days of disciplinary segregation

- 122 – Disrespect towards, lying to, and/or harassing an employee
    - Minor Violation on 10/28/18
    - Found Guilty
    - Sanctioned to 7 days Disciplinary Segregation
        - **In 2018**, there were 58 total tickets written for this violation.
            - 3 dismissed
            - 4 sanctioned to loss of privileges
            - 16 sanctioned to 4 days or less of disciplinary segregation
            - 35 sanctioned to 5 or more days of disciplinary segregation.
        - **In 2019**, there were 32 total tickets written for this violation.
            - 7 dismissed
            - 1 sanctioned to loss of privileges
            - 3 sanctioned to 4 days or less of disciplinary segregation
            - 21 sanctioned to 5 or more days of disciplinary segregation.

- 133 – Creating a minor disturbance
    - Minor Violation on 11/01/18
    - Found Guilty
    - Sanctioned to 7 days Disciplinary Segregation
        - **In 2018**, there were 11 tickets written for this violation. Of these, 2 were dismissed. The rest were sanctioned to 5 or more days of disciplinary segregation.
        - **In 2019**, there were 3 tickets written for this violation. Of these, 1 received 4 days or less of disciplinary segregation sanction and the other 2 received 5 or more days of disciplinary segregation for the guilty finding.

In Inmate Vann's case, the ticket issued on 11/01/18 for 133 – creating a minor disturbance, a minor violation, could have been written as a major violation based on his recorded behavior for a 028 – conduct which disrupts, disturbs, or interferes with the security or orderly operations.

**MULTI-TICKET COMPARISON:**

In 2018, there were approximately 130 incidents in the Adult Detention Center which resulted in multiple tickets being issued to one inmate.

In 2019, there were approximately 55 incidents in the Adult Detention Center which resulted in multiple tickets being issued to one inmate.

**USING PROGRESSIVE DISCIPLINE TO MANAGE INMATE BEHAVIOR:**

The disciplinary process is a continuum that includes a variety of disincentives in order to maintain control of housing areas and encourage compliance with facility rules. At the Wyandotte County Sheriff's Office Adult Detention Center, the expectations for inmate behavior are defined and conveyed through a published Inmate Orientation, Guidelines, and Rules sheet available in both English and Spanish. This rules sheet is provided at the time of booking and is also available in the housing units, on the kiosks, and on the inmate tablets. These rules reflect what is determined to be acceptable inmate behavior and these expectations are both reasonable and attainable. Inmate Vann was provided a paper copy of the Inmate Orientation, Guidelines, and Rules by Deputy Coon.

Established policy allows for the deputies to give verbal correction in response to inmate behavior that violates the rules. Policy allows for 23-hour lockdowns and other restrictive actions such as loss of recreation time or commissary. More serious incidents that may require more serious sanctions require a formal process through disciplinary hearings to ensure due process. To effectively manage inmate behavior, both formal and informal discipline are consistently carried out so that the inmates and the staff see the process as fairly implemented. Inmates are afforded an appeal process to a higher authority within the agency.

## CONCLUSION:

With consideration to Turner v. Safley, 1987, the Wyandotte County Sheriff's Office Adult Detention Center has a rational connection between the regulation of the conditions of confinement and the legitimate governmental interest for safety, security, care, custody, and control of Inmate Vann. The special management of this specific inmate has a direct correlation to the safety, security, care, custody, and control of the other inmates housed in the Adult Detention Center, Sheriff's Office sworn and civilian staff, and the community of Wyandotte County.

Due process was provided regarding Inmate Vann's status on disciplinary segregation. His placement in a segregated housing unit as a disciplinary sanction is an ordinary incidence/occurrence in both jail and prison life. The U.S. 6th Circuit Court ruled in 1998 that administrative segregation for two and one-half years did not give rise to a liberty interest in Jones v. Baker. Inconvenience is not a constitutional deprivation; Inmate Vann was not devoid of a single human need. He had access to medical/dental/behavioral health services.

Severe restrictions within this facility are necessary to address disruptive activity and/or any assaults on other inmates and/or staff. Inmate Vann displayed behaviors that pose a direct threat to the safety of persons and to the safe and secure operations of the facility. Per 2016 ACA restrictive housing standards, Inmate Vann's segregation status was reviewed by the Special Management team on a weekly basis. Any security memos are updated regularly and as needed. Inmate Vann receives monthly notice of his status review by the Special Management team. The same is true for all inmates within this facility. Once Inmate Vann was able to demonstrate a period of good behavior in compliance with facility rules, he was given a suspended disciplinary sentence and was returned to general population on 01/18/19.

Regarding the allegation of hiding an "injury," this writer has no knowledge of any injuries to Inmate Vann and has no access or authorization to his medical records.

Inmate Vann had access to Inmate Communication Forms (ICF) and the grievance system. The bulk of his letters, requests, and complaints were handled and addressed by Jail Administration directly. Any grievances Inmate Vann may have had or made, this writer is not aware of them. Inmate Vann wrote a lot of ICFs and letters during this specific period of detainment; very few of them were seen or answered by this writer. Inmate Vann was afforded due process in his disciplinary procedure and sanctions, which were based on Inmate Vann's behavior. His segregation status was valid, justifiable, rational, legal, and necessary for the safety and security of this facility, the other inmates, staff and volunteers.