In The United States District Court
For The District Of Kansas

Durayl Tyree Vann,
            Plaintiff

    V.                              Case No : 20-3200-SAC

Jeffrey Fewell, et al.,
            Defendants

Motion of Opposition

1) Comes now Plaintiff, Durayl Vann, pro-se in the above captioned case, filing this motion of opposition to defendants' motion to dismiss, with intentions of producing a show of good cause before the Honorable Courts as instructed by this Honorable Court.

2) Plaintiff contends that genuine issues, as mentioned in plaintiff's filed complaint (Case # 20-3200-SAC) do exist. In Support of Plaintiff's claims, he offers the following as listed below :

3) Plaintiff, in reference to nature of case (20-3200-SAC), does state claim of denial of access to medical attention (deliberate indifference). Plaintiff does ~~declare~~ declare that he is on file, in Wyandotte County Jail, as being on chronic care status and am a Chronic Care Recipient due to plaintiffs' history of medical/heart conditions and High blood pressure. And that plaintiff, while being in the custody of Wyandotte

County Jail, is to _receive "Chronic Care"_ attention when seeking medical attention pertaining to the issues of plaintiff's health ( see Attached Exhibit(s) : 5 (A) thru (E) ). The _Staff were aware_ of plaintiff being on Chronic Care whereas it was imperative that plaintiff has Access to medical attention if needed.

  4) _Plaintiff_ declares that he _did seek medical attention_ by asking _Deputy Mesner_ to call nurses _due to chestpains, etc._ _Several times_ but, was _continuously_ _maliciously_ _denied_ _medical attention_ by _Deputy Mesner_ ~~on~~ _multiple times_. Plaintiff declares that _there were several witness_ to this incident including the individual who was _in the next cell_ ( _Bruce Tyner_ ) who was later refused /_denied_ ~~by~~ _Sara Toms_ his and ~~plai~~ plaintiff's request _to be a witness,_ _on plaintiffs' behalf,_ at plaintiff's disciplinary hearing _facilitated_ _by Sara Toms._ Plaintiff contends that _Written declarations_ were scribed and _notarized_ by some of these _Witnesses_ (see exhibit(s) : 1 thru 4 )

  5) Plaintiff, in reference to nature of case ( #20-3200-SAC) does state claim of _use of excessive force_ , by defendants , against plaintiff. Plaintiff declares that he was _attacked_, _drug down_ _a flight of stairs_ by alleged defendants (as listed in complaint 20-3200-SAC) only to be _assaulted and batterized again_ while cuffed behind his back , at the bottom of the flight of stairs. Plaintiff states that _witness saw this_ and have _written_ _affadavits_ of said occurrence ( See Attached exhibit(s) ) as well as other incidents that are also mentioned in the aforementioned complaint ( see Attached declarations).

6) <u>Plaintiff</u> further contends that he <u>displayed no</u> <u>combative actions</u> towards anyone at all whereas any form of "<u>level of force</u>" should have been <u>used against plaintiff</u> so as to <u>cause</u> any form of <u>injurious harm to plaintiff's</u> person. Furthermore, it is the <u>testimony of the officers'</u> (defendants) that, in this Incident, <u>Plaintiff</u> <u>was</u> found in his cell <u>unconscious</u> and appeared to be <u>in a weakened state</u>. Plaintiff further states that, though he has not been allowed to <u>view video footage</u> of this incident (labeled exhibit "A" of Martinez Report), it <u>will show</u> that <u>plaintiff displayed</u> <u>no hostile or combative actions or behavior that would</u> <u>warrant any level of force</u>, let alone <u>excessive force</u>, <u>being used</u> against him in any manner in which defendants executed on plaintiff.

7) Plaintiff declares that he was, <u>as a result of</u> use of <u>excessive force by defendants</u>, <del>was</del> <u>coughing up blood</u>. Plaintiff further declares that <u>defendants</u> <u>did place knees on plaintiff's</u> <u>neck and back causing aphyxiation</u> to plaintiff and continued to do so even after plaintiff told them that he <u>couldn't breathe</u> and <u>begged them to stop</u> (see Video footage and body cams), in which caused other inmates to bang on doors and yell at them to stop <u>killing me</u> (plaintiff). Plaintiff declares that these <u>Deputies committed</u> these <u>actions</u> in a <u>malicious</u> <u>manner</u> <u>with intention to cause injurious harm</u>. Plaintiff displayed no actions or behavior warranting, nor justifying, any "level of force" of such an injurious nature being used against

his person. Such _use of excessive force Constitutes Cruel and Unusual Punishment_ under _8th Amendment of U.S. Constitution_. "_Level of force_" being defined as : Any physical actions used, by authoritive personel, upon anyone's person inorder to subdue or neutralize any acts of transgression, hostility, and/or combativeness with force, in a violatile manner, under justifiable means... Whereas such levels of force are only to be used to mitigate combative, hostile, and/or violatile actions or situations being caused/displayed by perpertrators of such actions of transgression.

9) Plaintiff, in reference to nature of case (#20-3200-SAC ), does state claim of _6th Amendment Violation_ of his _Due Process rights_ as listed in Count VIII of complaint. _Plaintiff_ declares that he _had a right to_ not only _face his accuser_ but, also had a _Constitutional right to obtain available witnesses who had sought to testify on plaintiffs' behalf_ for/during plaintiffs' disciplinary process and hearing held _before_ _disciplinary hearing officer Sara Toms_. _Plaintiff_ declares that he was not only _denied_ _all witness_ that were to give truthful testimony on his behalf but, _Sara Toms_ also _refused_ to go interview said witnesses as well as _denied_ to that _some_ ¹(witnesses)(_such as Bruce Tyner_) even existed. Plaintiff declares that _several witness were_ _available_ _but_ was _maliciously_ _denied by Sara Toms_ (see exhibit(s)          )

10) Plaintiff further declares that _Sara Toms_ _did sentence_

plaintiff to Segregation, for seeking medical attention, with malicious intent to prevent plaintiff from further seeking medical attention and documenting the wrongful acts of inmates being denied access to medical attention.

11) Plaintiff also contends that this was also done as a preventive measure, through the use of intimidation, threats, and fear of being consequented, for keeping the injuries ( that were being inflicted upon inmates by deputies) from being recorded by Medical staff; Whereas the actions of these officers excessive use of force would be exposed to the public. Plaintiff declares that he did write ICF's (Inmate communication forms) to Medical Staff (Nurses) documenting officers' and Sara Toms' actions of punishing inmates for seeking medical attention. Once certain Nurses became aware of Sara Toms and Deputies actions, they stated that it was wrong for inmates to be consequented for seeking medical attention and responded that "inmates shall not be punished for seeking medical aid. (see exhibit: 6 (H)    )

12) Plaintiff further declares that he did file grievances on Sara Toms in which, in retaliation, she denied me access to the law library, refused me access to legal mail correspondence with, both, criminal and civil courts via U.S mail. Whereas her actions of such denial of access to the courts not only caused me to miss several statute of limitations in multiple personal court cases but, also her actions caused detrimental damage affecting my personal livelihood

pertaining to my child custody case in which plaintiff has now lost parental rights and custody of his son. (see attached exhibit(s) 7(A), 8(A) thru*(P)*).

13) Plaintiff, in reference to nature of case (#20-3200-SAC), does state claim of 8th Amendment violation when Deputy Reid denied plaintiff his food trays, showers, clean clothing, and recreation. and medical attention. Plaintiff declares that he did document said incidents via IcFs and grievances as the actions of Deputy Reid occurred. (see exhibits) (see Video cam /body cam of officer Fanning).

14) Plaintiff, in reference to nature of case (#20-3200-SAC), does state claim that Warden Fewell did order plaintiff to be moved to an unfit cell that had a broken toilet in which was filled to the brim and overflowing with feces and urine, along with black mold and fungus on the floors and walls, and no running water out of the sink (see exhibit(s): 11(C) thru (D) ) as mentioned in complaint. Plaintiff did file complaints against these actions as they occurred.

15) Plaintiff also states that he was not informed of his mother's death after family members had informed administration (Fewell, Major Patrick, Sara Toms, Erik Sage) until days later. (see exhibit(s) 10(A) thru (C) ) And because of this, Plaintiff was unable to bury mother in accordance to their religious and spiritual belief.

16) Plaintiff, in reference to nature of case (#20-3200-SAC) do state claim that Major Patrick (defendant) did commit actions

as mentioned in complaint in count XII. Plaintiff declares that Major Patrick did threaten to "Kill plaintiff when he sees him on the streets" (see exhibits: 9(A) thru (H)). Plaintiff states that there were Witnesses to Major Patrick's action and threats on plaintiffs' life. and that these Witnesses did scribe affidavits (Notorized) bearing witness as to what they personally saw and heard. (see attached declarations).

17) Plaintiff declares that he did document all incidents mentioned in count XII as they occurred via ICFs and/or grievances as proof of occurrence of incidents. Plaintiff contends that he had to go on a hunger strike just to receive medical attention and to have access to other personel inorder to bring awareness to how plaintiff was being so harshly treated / inhumanely treated. (see exhibits: 6(A) thru 6(H)

18) Plaintiff contends that he was being retaliated against, denied all forms of communication to the public, courts of law, Etc and that Warden Jeffrey Fewell, Major Patrick, and Sara Toms make up the commitee of the Administration personel who continuously acted with deliberate indifference, made threats upon plaintiff's life, forced plaintiff to cremate mother ~~against~~ (against plaintiffs spiritual beliefs) and all that is listed in complaint as mentioned in Case No 20-3200-SAC.

19) Plaintiff, in reference to paragraph #65 of complaint (#20-3200-SAC) do state that his 14th Amendment right to equal protection was violated by Undersheriff Larry Roland and Sheriff Donald Ash once they had become "aware" of plaintiff being physically victimized (on several occasions) by their subordinates (Deputy sheriffs) working in their Wyandotte County Jail Facility and refused to not only investigate said allegations but, also failed to ~~the~~ take the proper preventive measures to prevent further attacks upon plaintiff by their subordinate deputy officers (defendants) that are listed in grievances, letters, and complaints that were sent to them.

20) Plaintiff declares that he did write letters, file grievances, and exhaust remedies up the chain of command to Undersheriff Larry Roland and Sheriff Donald Ash pertaining to matters and incidents mentioned in complaint case No: 20-3200-SAC, in which said letters, grievances, and ICFs were blantantly deliberately ignored, discarded, and disregarded whereas such use of excessive force, denial of medical treatment and access, denied access to law library, legal correspondance, and legal courts were allowed to continue, causing injurious ~~harm~~ harm upon plaintiff all the way up until plaintiff had finally left Under-sheriff Roland and Sheriff Donald Ash's Wyandotte County Jail Facility.

21) Their actions were done with deliberate indifference. And because plaintiff continued to suffer from physical injurious harm, caused by their Deputy Sheriffs, along with other acts as

mentioned in Complaint, after becoming aware of such occurrances further shows cruel and unusual punishment.

22) Plaintiff contends that Defendants Larry Roland and Donald Ash were aware of the actions of their Deputy Sheriffs beating black inmates, along with other acts of causing harm to residents of their facility, Yet maliciously failed to address said issues once they had become "aware."

23) Plaintiff declares that Larry Roland and Donald Ash were the appointing authority over said defendants mentioned in complaint 20-3200-SAC and. therefore had a responsibility and obligation to address said matters mentioned in ICFs, letters, and grievances that were addressed to them. Plaintiff states that Donald Ash and Larry Roland never addressed these matters, after becoming aware, at all but instead simply ignored them and refered them back to Major Patrick and Warden Fewell (The 2 individuals who were participating in said acts mentioned in complaint). See Attached exhibits where Warden Fewell and Major Patrick continuously signed off on paperwork addressed to Undersheriff Roland and Sheriff Donald Ash. inorder to circumvent and hinder the grievance process.

Over-view/summary

24) Plaintiff declares that the defendants in Case No 20-3200-SAC did enter a Martinez Report into court record and that

plaintiff did attach documents from this Martinez Report to be included in this Motion of Opposition as fact finding evidence supporting plaintiff's claims, as mentioned in this Motion (paragraphs #1 thru #70) as well as in Complaint No: 20-3200-SAC (paragraphs #1 thru # 103      ) in endeavors of showing good cause before this Honorable Court. In Support of plaintiff's show of good cause he states the following:

25) A) According to the "Martinez Report" that was produced by defendants, Officer Mesner has never denied that he refused me medical attention. No affidavit was ever entered into record, by Deputy Mesner, that he did not deny plaintiff medical attention on the date of 10-28-18.

26) In support of plaintiffs claims, he offers notarized declarations written by eye witnesses that support the facts of plaintiff's claims pertaining to Deputy Mesner.(see attached exhibit(s) #1 thru 4). Plaintiff also offer documentation of history of being on Chronic Care Status, While being detained in Wyandotte County Jail, in support that plaintiff should not have been denied Medical attention without justifiable cause, and that plaintiff's medical concerns were legitimate and a genuine issue that existed. (see exhibits #5(A) thru #5(D))(See video footage showing Deputy Mesner by passing plaintiffs' cell 2-3 times refusing to call Medical nurses after plaintiff asked him several times to do so).

27) B) According to Martinez Report, defendants do not deny that an incident, pertaining to plaintiff (as mentioned in Case No 20-3200-SAC), did

occur on October 28 2012 whereas plaintiff was drug out of his
cell, cuffed behind his back, drug down a flight of stairs, and further
agg assaulted and batterized once again at the bottom of the stairs.
Video footage will show defendants' actions as mentioned in plaintiffs
complaint 20-3200-SAC thus supporting plaintiffs claim of
evidence of a form of Corpus Delecti existing. Video footage and
body cam footage will show knees being placed on plaintiff's neck and
back ~~while p~~ while plaintiff was being aphyxiated, coughing up blood,
begging for his breathe, and pleaing for them to stop "killing me".
The Audio of this footage will also show that the inmates were
yelling for the defendants to stop killing the plaintiff, etc.

28) Plaintiff offers said video footage as support of claims
made by plaintiff. Plaintiff also offers notarized declarations
written by eye witnesses as supporting evidence to stated
claims. Plaintiff declares that the contents in the Martinez Report
doesn't state ti reason justifying use of the level of force used
on plaintiff. It was a medical situation, not a Combative situation

29) The Martinez Report doesn't state that a level of force was
required, warranted, or necessary for the nature of said incident.
whereas such "level of force" and "Use of excessive force" could be,
should be, or "Would be./is" justified in its appliance or application
to the nature of this incident in its occurrance.

30) Plaintiff was found in cell unconscious and in a weakened
state. Not combative, hostile, or transgressive whereas such
"levels of force" are to be used in a manner to subdue or
neutralize a physically aggressive situation or altercation.

Attn: The X across paragraph C is a typo, Please do not exclude
Paragraphs 31 or #32

The use of excessive force, by defendants, were unwarranted,
unjustifiable, and done in a wanton malicious manner.

31)   C) Plaintiff's 6th Amendment right to due process was violated
when Sara Toms refused to allow witnesses to testify on plaintiff's
behalf during disciplinary hearings and when plaintiff was denied
his 6th amendment right to face his accuser.

32)   Plaintiff declares that he did request witnesses (Bruce Tyner,
Etc) but, was either denied or maliciously ignored. Plaintiff did
invoke his right to face his accuser but was also denied. Plaintiff
states that several witnesses asked to testify on my behalf. One
main witness (Bruce Tyner) was never called. According to
Sara Toms there was no such inmate by the name of Bruce
Tyner ever residing in Wyandotte County Jail. Plaintiff declares
that she blatantly lied to plaintiff. May the record reflect that
during the time of the incident, Bruce Tyner occupied the very
next cell to plaintiff. There is no evidence that Sara Toms even
sought ~~all~~ out any of the listed witnesses that I requested to have
at my hearing. Nor were there any written documentation of
any discussions or dialogues transpired between witnesses and
Sara Toms supporting that she heard any witness testimony or
interrogated anyone. (see exhibits # 12 (E)     )

33)   Plaintiff further states that plaintiff did not have an
extensive disciplinary history. Plaintiff states that multiple ~~infract~~
infractions were written on one ticket from the same incident
whereas said ticket was Maliciously ~~to~~ broken down and re-written

as isolated incidents/actions with the purpose of manipulating the disciplinary system inorder to place plaintiff in a segregation under a security risk status with an extensive /indeterminate amount of disciplinary segregation time to serve. This was done with the intent of keeping plaintiff in seg and unable to expose the truth of the incident while the administration tries to clean up and "sweep" their wrong doings under the rug. Furthermore, plaintive did not have any physical combative, hostile write-ups. that would warrant or justify such extensive dis seg time or warrant Security Risk status that would keep me in the seg Units until I had finally left the facility.

34) Plaintiff was denied access to law library, legal courts, and mail correspondance (legal mail) whereas plaintiff had no ability to litigate plaintiffs' criminal and legal Civil (child custody) cases. This was done by the Administration (Sara Toms, Major Patrick, Warden Fewell) to also keep plaintiff from documenting and filing complaints and creating a paper trail of such complaints and grievances. Plaintiff was also denied ICFs inorder to prevent me from filing paperwork. Plaintiff was also sent to seg for seeking Medical Attention. (See exhibit # 8(A) thru (P))

35) Administration Also confiscated plaintiffs' legal work and refused to give It back with intentions to keep me from litigating my cases. It is because of this that I've missed several statute of limitations as well as lost my son in a child custody case. (See Exhibits # 8(A) thru (P))

36) D) Plaintiff states that Deputy Reid did deny plaintiff his food, showers, clean clothing, recreation, and medical attention. Plaintiff was treated so grossly inhumane that plaintiff went on hunger strike just to get medical attention, a shower, and access to other staff, who were not part of the administration, to inform and expose how I was being treated by Wyco Jail administration and its subordinates.

37) Plaintiff offers ICFs, letters, and grievances in support of stated claims as mentioned above. Also see Body Cam footage of Officer Fanning and Officer Jasso.

38) E) Plaintiff states Warden Fewell ordered plaintiff to be placed in an unfit cell that had a broken toilet overflowing with feces and urine, no running water, and with black mold and fungus covering the floors and walls. Per Warden Fewell and Major Patrick I was to be moved into that cell by force, if necessary. Plaintiff contends that there were several other empty cells that were available including other cells that were in camera's view for Jas observation cells.

39) Plaintiff contends that he did file complaints on this incident. It was several dayz later, after a complaint was filed, that it was cleaned and toilet and sink fixed. (See Attached Exhibit ※ 11(A) thru(I) ).

40) Plaintiff further contend that plaintiff was not notified of mothers' death; after plaintiffs' family had already notified administration, until dayz later. (See exhibit ※ 10(A) thru(C)) and because of the Administration's

actions, plaintiff was forced to cremate his mother against in accordance of plaintiff and mothers spiritual and religious beliefs. Plaintiff declares that his spirituality is Muslim and his family's religion is Al-Islam. In accordance with plaintiffs religious beliefs, deceased Muslims are to be cleaned, shrouded, and properly buried... not cremated. The actions of this, alone, has caused injury to plaintiff and plaintiff's family beyond repair.

41) F) Plaintiff states that <u>Major Patrick</u> did threaten plaintiff's life when he threatened to "kill plaintiff ~~on the~~ when he sees plaintiff on the streets."

42) Plaintiff declares that notarized declarations were written by eye witnesses are attached to this motion as exhibits of evidence supporting claims and facts stated by plaintiff.

43) Furthermore Major Patrick, at first, denies that he threatened to kill plaintiff when he sees plaintiff on the street (see ~~EEF~~ Exhibit *9(B)-(H). Then Major Patrick later finally admits, in an affidavit that was in the Martinez Report, that he did say what plaintiff had claimed ie that "he was gonna kill me when he sees me on the streets." See exhibit *9(B)(H)

44) Plaintiff further contends that Major Patrick forged a false document (Icf) using a false inmate name and inmate number in order to place false pretenses of a security risk so that he could use it as a vice to keep me in segregation. (see exhibit *9(H))

Plaintiff further declares that plaintiff has never threatened

any staff, Medical nurse, or officer and that Major Patrick did lie claiming that I wrote a letter stating "Ima fight Them"... and used that as one of his many vices to place plaintiff under a false security risk protocol and then, used this protocol as a methodical tool to keep plaintiff in segregation for an indeterminate amount of time (see exhibit #9(A)). Plaintiff has no history of violatile write ups.yet, was placed under security risk status and was place in seg longer than other inmates (caucasions) who had Write-ups for battery on Law Enforcement Officers, fighting, stealing, and dangerous contraband. (see Attached Exhibits # 4(F)   ).

45) G) Plaintiff states that Under sheriff Larry Roland and Sheriff Donald Ash did receive letters, ICFs, and grievances from plaintiff concerning all issues listed in this Motion of Opposition and complaint (case NO: 20-3200-SAC). Plaintive declares that defendants Larry Roland and Donald Ash were the Appointing Authority over The Wyco Jail Facility and Warden Fewell (administration) including his subordinate Deputy Sheriffs.

46) Plaintiff declares that defendants, as the appointing authority, was aware of the actions of their subordinate Officers but, failed to prevent further injury upon plaintiff while having the position and power to do so as the appointing authority over the facility and its staff/personel. Donald Ash and Larry Roland while being aware of these issues, made a conscious decision to allow these acts of intimidation, threats, use of excessive force, violations of due process rights to continue causing injurious

harm to plaintiff until plaintiff had finally left the facility.

47) Plaintiff, according to the Martinez Report, states that Undersheriff Roland and Sheriff Ash never denied being "aware" of plaintiffs complaints, the actions of their officers, nor any of the issues mention in plaintiffs complaints of the issues that were taking place in their facility. They simply knew and were ~~see~~ aware but, ignored and refused to do anything about the actions of their officers. And because of this, their officers continued in such actions because there was no repercussions or fear of consequences of their actions.

48) Plaintiff declares that the appointing authority is responsible for the actions and accountability of their subordinate staff as well as responsibility for what goes on in their facility. and therefore had an obligation to protect not only its staff but also the inmates residing in their facility due to the Officers holding guardianship over inmates while they are detained in their facility.

## In Summary

49)    A "Martinez Report" is used as a means to ascertain whether there is a factual, as well as, a legal basis for a prisoner's claim (Gee V. Estes 829 F.2d 1005). And that the Martinez Report is to be treated like an affidavit and that the court is not authorized to accept the findings of the ~~prisoner~~ prison investigation when the plaintiff has presented conflicting evidence (Hall V. Bellman, 935 F.2d 1106).

50) Plaintiff declares that said incidents mentioned in this motion did occur as stated in complaint # 20-3200-SAC and that plaintiff did document (via ICFs, letters, and facility grievances) incidents as they occurred. Facility cameras and Body cameras of alleged defendants will also show and support factual claims stated by plaintiff in said complaints. Plaintiff further declares that there were witnesses to these incidents. These witnesses offer written notarized declarations/affidavits (under penalty of perjury) as true factual testimony of what they witnessed objectively, in support of plaintiffs claims. Plaintiff has attached these declarations, as exhibits of evidence, to this motion in support of plaintiffs claims (see exhibits of evidence). Facts are as listed below:

51) Plaintiff claims denial of medical attention as listed in paragraph #3; #4. Plaintiff states that Deputy Mesner did deny plaintiff access to Medical attention. Deputy Mesner does not deny that he refused plaintiff medical attention, which led to the following chain of events that are listed in complaint. The Fact exist that plaintiff was denied medical attention several times by Deputy Mesner without justifiable cause.

52) Plaintiff claims that defendants, as listed in complaint, used excessive force upon plaintiff in a wanton malicious manner with intentions to injure plaintiffs person. Plaintiff states that he was assaulted and batterized, drug down stairs, then once again assaulted and batterized at the bottom of stairs by defendants.

Plaintiff declares that plaintiff displayed no physical actions nor verbal actions that would warrant such use of excessive force being deployed upon plaintiff. Plaintiff and Defendants both agree that plaintiff was found in cell unconscious and in a weakened state whereas no actions ~~eth~~ of combativeness, transgression, or hostility were being displayed that would warrant or justify use of any "level of force" or use of excessive force. Defendants never deny that plaintiff was cuffed behind his back, Assaulted and drug out of cell, drag down stairs, and assaulted again. Defendants never claim that I displayed any hostile acts that warranted such force being used. Plaintiff declares that in the said incident plaintiff was never written up a disciplinary infraction for any type of acts of violence which proves that plaintiff displayed no actions justifying the defendants actions. Defendants' never deny that plaintiff was coughing up blood, gasping for air telling them that I couldn't breathe, begging them to stop killing me, and asking their reasons for doing this (see body cameras of alleged defendants). Defendants never deny putting their knees in plaintiffs neck and back. Defendants do not deny that such an incident as mentioned in complaint did occur on date mentioned in complaint. Plaint further offers declarations from eye witnesses (see attached Exhibits ×1 thru 4) as support of the truth of plaintiffs' claims against defendants.

53)   Plaintiff declares that Defendant Sara Toms did violate plaintiffs due process during disciplinary procedures. Plaintiff states that Sara Toms denied allowing Witnesses that were to

testify on plaintiffs' behalf participate in proceedings. Sara Toms also denied plaintiff right to face his accuser. Plaintiff contends that he did fill out the proper paperwork to request witnesses as well as face accuser. Plaintiff declare that all witnesses requested were available. I was told by Sara Toms that she is not going to call any witness on my behalf. Bruce Tyner was a witness requested by plaintiff. Sara Toms refused to call him stating that he was a made up name and that he never existed nor ever resided in Wyandotte County Jail. IN Contradiction, to Sara Toms claims, Bruce Tyner resided in the very next cell of plaintiffs' during the occurance of said incident. Bruce Tyner didn't did exist, resided in Wyandotte County Jail at the time of incident, did witness said incident and wanted to testify on to what he witnessed, and did not leave "WCJ" until several months later after incident. Plaintiff states that Witnesses were available but denied

54) Sara Toms also sentenced plaintiff to seg time for seeking medical attention, Threatened to keep plaintiff in seg until plaintiff leaves "WCJ", denied plaintiff law library, and access to both criminal and cival courts whereas her actions caused plaintiff to lose his child in a child custody case. Sara Toms (as part of administratior did have my legal work confiscated several times and refused to return it back to plaintiff with intentions to hinder, block, circumven plaintiff access to courts (both civil & criminal) as well as from utilizin the grievance system and the right to redress grievance issues. Plaintiff did document and file grievances on these issue. and further offers Attached exhibits in support of plaintiffs claims, (See Exhibits # 8(A) thru (P)),

55) Plaintiff was denied food, medical attention, showers, clean clothes, and Recreation time by defendant Deputy Reid. Deputy Reid did this in retaliation of grievances being filed on her and her fellow Co-workers. Plaintiff did file grievances on her actions of denying plaintiff his basic necessities that he was entitled to in which, the defendant and her Co-workers would throw paperwork in the trash inorder to keep it from being filed once plaintiffs legal work was confiscated (on a regular basis) by administration and staff (per warden Fewell). Plaintiff did go on "hunger strike" due to the gross inhumane treatment toward plaintiff by defendant and her Co-workers. Deputy Fanning and Jasso have my complaints also verbalized on their body cams and can contest to the inhumane treatment that plaintiff endured by defendants. Deputy Vereen can/will also contest to the same facts. (See exhibits *6(A) thru 6(H))

56)   Plaintiff claims that Warden Fewell ordered plaintiff be placed in an unfit cell with intentions to try to break plaintiff from filing paperwork and documenting the actions of said defendants. Warden Fewell denies that the cell was unfit. Plaintiff did file complaints on this issue and, in contradiction to Warden Fewells claims/denials, offers an attached exhibit stating that the "cell has now been fixed and cleaned," after Warden Fewell had forced plaintiff, with the threat of violence, to move in that particular cell. (see Attached Exhibit **1(A) thru(I))

57) Plaintiff declares that administration failed to inform plaintiff of his mothers death, after being informed by plaintiff's family, until days later. And

because of this, plaintiff was unable to have mother buried
in the proper fashion in accordance to plaintiff and family's
religious and spiritual faith. Instead, plaintiff was forced to
cremate mother which goes against plaintiffs/familys religion.
Both plaintiff and defendants (administration) do declare that
defendants failed to inform plaintiff of mother's death until
days later ( see Exhibits * 10(A) thru 10 (C)

58) Plaintiff declares that Defendant Major Patrick did
threaten to "kill" "plaintive" when * he sees plaintive on the
streets." Major Patrick initially denies making such threats
but later admits making such threat. in attempts to mitigate and
minimize the impact of such a threat being made towards plaintiff
Plaintiff offers notarized declarations written by witnesses
to his threats towards plaintiff. (see Exhibits * 9(A) thru(H))
Such threats show Major Patricks feelingz towards plaintiff and
show that the actions (mentioned in complaint) by Major Patrick
toward plaintiff were personal, wanton, and malicious in their
intent.

59) Plaintiff declares that he did inform the Appointing
Authorities (defendants: <u>Undersheriff Larry Roland</u> and <u>sheriff</u>
<u>Donald Ash</u>.) about all issues mentioned in this Motion of Opposition
and complaint case no: 20-3200-SAC several times (via letters)
ICFs, and grievances and phone calls from family members).
Plaintiff declares that Larry Roland and Donald Ash were
"<u>aware</u>" of plaintiffs claims, and actions of their Deputies
against plaintiff but, made conscious decisions to ignore,

disregard, and discard said complaints with malicious deliberate indifference, violating plaintiffs' rights to equal protection, thus allowing such actions of injurious nature to continue being inflicted upon plaintiff. Plaintiff states that these issues were not investigated and that Major Patrick and Warden Fewell were also answering grievances, ICFs, and letters addressed to their superiors Undersheriff Roland and Sheriff Ash inorder to ~~remove~~ keep paperwork from reaching their superiors. (See Attached Exhibits #12(M)  ).

## Summarized Conclusion

60) In conclusion, Plaintiff declares that he did document all incidents as they occurred (via Icfs, letters of complaint, and grievances). Plaintiff declares that he has filed grievances on said issues (as mentioned in complaint 20-3200-SAC) and that he exhausted all grievances up the chain of ~~comman~~ command to the highest position that could be reached in the facility of Wyandotte County Jail and Sheriffs' Office. Plaintiff states that he has extensive documentation (ie Icfs, letters of complaint, and grievances) pertaining to the actions of the defendants mentioned in case no 20-3200-SAC, which are in support of plaintiffs' stated claims. This extensive documentation have been entered into court record via plaintiffs "1983" complaint case no: 20-3200-SAC, defendant's Martinez Report, and this forthcoming Motion of Opposition.

61) Plaintiff states that the claims and facts, stated by plaintiff, in this motion, are objectively stated and that, when the attached exhibits of evidentiary documentation (that plaintiff has offered into record) are applied before this Honorable Court it will support plaintiffs stated claims as well as show that genuine issues do exist whereas a standard of showing for "good Cause may be met before this Honorable Court.

62) Plaintiff declares that plaintiff's motion (including attached documents of evidence/exhibits) not only contradict some of defendants' claims but, are also compatible with facts that incidents did actually occur, whereas a form of "Corpus delicti" does exist within all complaints, filed by plaintiff, that were entered into the records of this Honorable Court.

63) Plaintiff state, when applying combined contents of this motion (including its attached exhibits), plaintiffs 1983 complaint, and the martinez report to the nature of complaint of the original complaint case (No: 20-3200-SAC), such factual evidence meets a standard of preponderance of evidence, as needed or required in supporting plaintiffs claims as mentioned in complaint case no: 20-3200-SAC.

64) | * Preponderance being defined as... " When all the evidence more clearly and more probably favors one side than the other, that side has established a preponderance of evidence which satisfies its burden of proof. *

65) Plaintiff believes facts and evidence used to support plaintiff's claims of alleged incidents factually occurring outweigh defendants' denial, claims, and reasons for seeking this Honorable Courts dismissal of plaintiff's complaint. Furthermore, may the record also reflect plaintiff's request of the audio/video footage from alleged defendants body camera, along with WCJ Facility's stationed pod cameras pertaining to the times and dates of this matter, be allowed to be entered into court record, as evidence, in support of Plaintiff's claims. Plaintiff states that ~~overall~~ evidence overall, produced by plaintiff, shows conflicting evidence whereas contradictions do exist in this matter.

66) Plaintiff once again declares that all alleged incidents in Complaint Case no: 20-3200-SAC did occur as stated in claim and that plaintiff did document (via Icfs, letters of complaint, and filed grievances) said incidents as they occurred. Plaintiff further declare that notarized affidavits were written by eye witnesses, under penalty of perjury, of true accounts to what was witnessed. These declarations are attached as exhibits and are offered in support of plaintiffs' claims.

67) Plaintiff ask this ~~Honorabl~~ Honorable Court to entertain this motion of opposition whereas a show of good cause has been met by plaintiff. Plaintiff believes that contradiction and conflicting claims do ~~exsis~~ exist in the aforementioned matter and that genuine issues do exist.

Pg 26 of 26

68    Therefore plaintiff prays this court allow this motion and its attached contents to be sufficient in being a show of good cause whereas plaintive may continue in seeking justice, for injustices done, through this Honorable court.

69    Furthermore, Plaintiff declares that everything in this document is true to the best of plaintiff's Knowledge, under penalty of perjury, and that this motion was written by the plaintiff, Durayl Vann and that this motion was filed on 4-14-22 at Lansing Correctional Facility

x Durayl Vann #76997

Plaintiff: Durayl Vann 76997
P.O. Box 2
Lansing, KS 66043

Notary:



9/20/25

Audrey Metzger
NOTARY PUBLIC~STATE OF KANSAS
MY APPT EXP:

70)    Certificate of Service

I, Durayl Vann (plaintiff) do hereby declare that this is an original document scribed by me and that the contents of this motion is true, under the penalty of perjury, to the best of my knowledge and that this motion was E-filed on this 14th day of April, 2022 at Lansing correctional Facility.

x Durayl Vann
Signature